186 N.W.2d 573 (1971)
STATE ex rel. Donald R. HOLLOWAY, Securities Commissioner, and Gilbert W. Ellwein, State Examiner of the State of North Dakota, Plaintiffs and Appellants,
v.
FIRST AMERICAN BANK & TRUST COMPANY, a domestic corporation, and Robert M. Hart, a/k/a R. M. Hart, Harvey W. Boen, Albert W. Fetzer, Ruth M. Hart, Bernard H. Hillyer, Jerry D. Pritchett, Arne J. Springan, John F. Sullivan, Charles L. Welch, Defendants and Respondents.
Civ. No. 8693.
Supreme Court of North Dakota.
March 31, 1971.
Rehearing Denied May 21, 1971.
*575 Helgi Johanneson, Atty. Gen., and Arley R. Bjella, Frank F. Jestrab, and John R. Gordon, Sp. Asst. Attys. Gen., Williston, for plaintiffs-appellants.
Frederick E. Saefke, Jr., and Thompson, Lundberg & Nodland, Bismarck, for defendants-respondents.
TEIGEN, Judge.
This is an appeal from an order of the district court denying a motion for a temporary injunction and vacating a temporary restraining order issued on an order to show cause.
The State, upon relation of its security commissioner and the commissioner of banking and financial institutions, known as the state examiner (hereinafter referred to as the State), seeks a permanent injunction against the defendant First American Bank & Trust Company, a domestic corporation, and its president and directors (hereinafter referred to as the trust company), permanently enjoining the trust company from continuing certain alleged practices in the conduct of its business. The two State officers have joined in the State's action. Both seek the same relief, claiming injunction should issue either under the statute governing trust companies (Chapter 6-05, N.D.C.C.), or the Securities Act of 1951, as amended (Chapter 10-04, N.D. C.C.), whichever the court may find applicable and, therefore, pray in the alternative for injunctive relief under one or the other of these chapters.
Upon application of the State, the trial court issued an order directed to the trust company to show cause why a temporary injunction should not issue pending a decision on the merits, and it also issued its ex parte temporary restraining order. Following the hearing on the order to show cause, the order from which this appeal is taken was issued. This order vacates the temporary restraining order and denies the State's application for a temporary injunction. Concomitant with the appeal the State made application to this court ex parte for a temporary restraining order and a temporary injunction pending the decision on the appeal. This court issued an order directed to the trust company to show cause why it should not be enjoined and restrained during the pendency of the appeal from carrying on the business practices complained of in the complaint, and issued its ex parte restraining order. Following a hearing on the order to show cause, this court denied the application for a temporary injunction pending the appeal and vacated its temporary restraining order. In the order we recommended that the main case be expeditiously tried in order that all issues involved may be fully adjudicated. When the appeal had been perfected the *576 matter was placed on the calendar and we heard arguments at the next term. At that time we were advised by counsel that the main case had not been set for trial nor tried as of that date.
The granting of a temporary restraining order and a temporary or final injunction, when authorized, is a matter resting largely within the sound discretion of the trial court and its judgment will not be disturbed except in case of a clear abuse of such discretion. Lindsay v. Teamsters Union, Local No. 74, 97 N.W.2d 686 (N.D. 1959); Lee v. Jordan, 50 N.D. 365, 195 N. W. 660 (1923); Beiseker v. Svendsgaard, 28 N.D. 366, 149 N.W. 352 (1914). The district judge may modify, continue or dissolve an injunction, or refuse to do so, as well as grant or refuse to grant the injunction in the first instance. His action will not be disturbed unless it appears that there was an abuse of discretion. Lindsay v. Teamsters Union, Local No. 74, supra; Larson v. Jacobson, 54 N.D. 69, 208 N.W. 833 (1926); Mevorah v. Goodman, 65 N. W.2d 278 (N.D.1954).
The State, as appellant, had the burden of showing error and establishing affirmatively that the trial court abused its discretion. Lindsay v. Teamsters Union, Local No. 74, supra; First National Bank of Crary v. Bremseth, 60 N.D. 401, 234 N. W. 758 (1931); Mevorah v. Goodman, supra. The record has been examined and we find that the State has failed to sustain the burden of proof.
The main case has not been tried. A suit for an injunction is an equitable proceeding which is designed to protect people by preventing unlawful acts which are against public policy and cause irreparable injury to civil or property rights or privileges of the people. State ex rel. Burgum v. Hooker, 87 N.W.2d 337 (N.D.1957).
It is admitted that the defendant trust company is organized and existing under Chapter 6-05, N.D.C.C. This chapter provides for the organization, powers, authority and regulation of annuity, safe deposit, surety, and trust companies. The terms used in Title 6, Banks and Banking, N.D.C.C., unless the context otherwise plainly requires, are defined in Section 6-01-02, N.D.C.C., as follows:
"1. * * *
"2. `State banking association', any corporation organized under the laws of this state covering state banking associations or savings banks, and all corporations, partnerships, firms, or associations whose business in whole or in part consists of the taking of money on deposit, excepting national banks, trust companies, and the Bank of North Dakota;
"3. `Banking institution', any bank, trust company, bank and trust company, stock savings bank, or mutual savings bank organized under the laws of this state;
"4. `Trust company', any corporation formed for the purpose of transacting business as an annuity, safe deposit, surety, or trust company;"

* * * * * *
Under these definitions the defendant is a "trust company" and also a "banking institution." However, it is not a "state banking association" as trust companies are specifically excepted from that definition. We held in Nelson v. Dakota Bankers Trust Company, 132 N.W.2d 903 (N.D. 1965), that Section 6-01-02, N.D.C.C., expressly excludes "trust companies" from the definition of "banking associations," but includes them in the definition of "banking institutions."
The principal issue in the main case is whether a "trust company" is governed in the issue and sale of its securities by the Securities Act (Chapter 10-04, N.D.C.C.). The State alleges in its complaint that the defendant trust company advertises, offers for sale, and sells certain securities, to wit, notes or debentures, i. e., unsecured promises *577 to repay money paid for the said securities, plus interest, which securities or debentures were described as "guaranteed certificates of investment" and "capital notes," which have not been approved by the securities commissioner as required by Sections 10-04-07 and 10-04-08, N.D.C.C., and without the trust company being registered as a dealer under the provisions of Section 10-04-10, N.D.C.C. These allegations are admitted and the defendant trust company has interposed a defense that it and its securities are exempt from the Securities Act.
The complaint also alleges that the defendant trust company issued and sold the above described securities without having submitted them to or having secured the approval of the state examiner, as required by Section 6-03-41, N.D.C.C. The defendant trust company, by answer, alleges that it submitted its "investment program together with instrumentation" to the state examiner, but denies that the same is required by Section 6-03-41, N.D.C.C.
In addition, the complaint alleges that the defendant trust company has agreed to pay usurious interest rates on its investment securities; that it has sustained an accumulative operating deficit of over $215,000; that it is subject to civil liabilities in actions by creditors or stockholders because of its unlawful business practices; that the state examiner issued his order to cease and desist from selling any capital notes or to make or publish any book, prospectus, notice, reports, statement, exhibit, or other publication containing reference to capital notes as a part of the capital structure; and that the defendant trust company has failed and refuses to publish a statement of condition pursuant to the requirements of Section 6-03-70, N. D.C.C., and the orders of the state examiner. All of these allegations are denied or explained by the defendant trust company in its answer. In its prayer for relief the State seeks an injunction whereby the defendant trust company would be permanently enjoined from carrying on the business practices described in the complaint.
If the defendant trust company is engaging in an act, practice, or transaction which is prohibited under the Securities Act (Chapter 10-04, N.D.C.C.), the securities commissioner may, in his discretion, apply to the district court for an injunction restraining the violator from continuing such act, practice or transaction, or engaging therein, or doing any acts in furtherance thereof, or he may transmit such evidence as may be available to the attorney general who, in his discretion, may institute a criminal proceeding, or institute proceedings for an injunction. Section 10-04-16, N.D.C.C. However, we find no similar right has been extended to the state examiner under the "Banks and Banking Laws" except as provided by Section 6-05-02, N.D.C.C., which is not applicable here.
We will first consider whether the defendant trust company is required to register its securities with the securities commissioner. Section 10-04-04, N.D.C.C., provides that it is unlawful to sell, or offer for sale, unregistered securities not exempt under Section 10-04-05, N.D.C.C. Section 10-04-05(2), N.D.C.C., exempts from registration:
"Securities * * * issued by a state bank, trust company, savings bank or savings institution or credit union incorporated under the laws of this state, and subject to supervision by this state or by any agency thereof, and securities of any person subject to examination by the state examiner of North Dakota."
The interpretation of this section is in dispute. The State contends that this section exempts securities subject to supervision, and the defendant trust company contends that this section exempts securities issued by a trust company subject to supervision. The State argues that the last clause "and securities of any person subject to examination by the state examiner of North Dakota" necessarily describes a different kind of security than those described in the *578 immediately preceding clause, and interprets it to exempt securities of persons as opposed to the corporations described in the immediately preceding clause. The defendant trust company interprets the word "person" in accordance with the definition contained in Section 10-04-02(6), N.D. C.C., which states:
"`Person' shall mean an individual, a corporation, a partnership, an association, a joint stock company, a trust, or any other unincorporated organization."
It argues that this clause is also applicable to a trust company. If we rearrange the structure of the section to comply with the interpretation suggested by the State, the section would read: "Securities subject to supervision by this state or any agency thereof issued by a state bank, trust company, etc., are exempt from registration." Such an interpretation would include supervision by the securities commissioner, a State officer who has the prime duty to administer the provisions of the Securities Act (Section 10-04-03, N.D.C.C.); whereas, if we interpret this section as prayed for by the defendant trust company, it will exempt securities issued by a trust company which is subject to supervision by the State or any agency thereof.
The defendant trust company is subject to the supervision of the state department of banking and financial institutions which, in turn, operates under the supervision of the state banking board and a chief officer, designated as the commissioner of banking and financial institutions and known as the state examiner. Section 6-01-01, N.D.C.C. This section provides that this department shall have charge of the execution of all laws relating to trust companies, banking institutions and other financial corporations, exclusive of the Bank of North Dakota and credit unions. The state banking board is granted power to make such rules and regulations for the government of trust companies, banking institutions and other financial corporations, mentioned in Section 6-01-01, N.D.C.C., as in its judgment may seem wise and expedient, with power to make and enforce such orders as in its judgment may be necessary or proper to protect the public and the depositors or creditors of such financial corporations and institutions. Section 6-01-04, N.D.C.C. The state banking board and the state examiner, and his deputy examiners, have the power to subpoena witnesses, administer oaths and, generally, to do and perform any and all acts and things necessary to the complete performance of the powers and duties imposed upon them, and to enforce the provisions of law relating to financial institutions. Section 6-01-05, N.D.C.C. The banking board may appoint, by its own order, receivers with the same power and authority as if they had been appointed under and by the direction of a district court. Section 6-01-06, N.D. C.C.
Finally, the state examiner shall exercise a constant supervision over the business affairs of the corporations placed within the jurisdiction of the state banking board and shall personally, or through deputy examiners, visit each of the corporations under his jurisdiction, examine into its affairs and ascertain its financial condition, and report the condition of such corporation, together with his recommendations or suggestions, to the state banking board which may take such action as, in its discretion, the exigencies may demand. Section 6-01-09, N.D.C.C. Section 6-05-04, N.D.C.C., requires every trust company organized under the provisions of that chapter, with certain exceptions not important here, to deposit qualified securities with the state treasurer or the federal reserve bank (Section 6-05-04, N.D.C.C.), which securities shall be held for the benefit of persons making any transfer or deposit of money or property to or with such corporation who shall suffer loss or damage because of the breach of any trust. Section 6-05-04.1, N.D.C.C. Whenever it shall appear to the state examiner from an examination of the business of any trust company that the deposit *579 is insufficient to insure the safety of its deposit, trust and contingent liabilities, he shall make an order requiring an increase of such deposit and the trust company is required to comply with such order. Section 6-05-27, N.D.C.C. The state examiner shall make a full, true, complete and accurate examination and investigation of the affairs of each trust company once in each six months, or oftener if required, and shall assume and exercise over such corporation, and its officers, directors and employees, all the power and authority conferred upon him over banking and other financial or moneyed corporations or associations. Section 6-05-28, N.D.C.C. If it shall appear to the state examiner that any such corporation has committed a violation of the law or is conducting its business in an unsafe or unauthorized manner, or that the deposit made by it with the state treasurer is insufficient to protect the interests of all concerned, the examiner, by an order addressed to such corporation, shall direct the discontinuance of such illegal and unsafe practice and order it to conform with the requirements of the law, or to make a further deposit with the state treasurer in an amount sufficient to insure the safety of its trust, deposits and liabilities. If the corporation shall refuse to comply with any such order, or whenever it shall appear to the examiner that it is unsafe or inexpedient for any such corporation to continue to transact business, he shall communicate the facts to the attorney general, who thereupon shall institute such proceeding against any such corporation as the case may require. Section 6-05-29, N.D.C.C.
Thus it is clear that the defendant trust company, being a corporation organized under Chapter 6-05, N.D.C.C., is subject to supervision by the State through an agency thereof and that its securities need not be registered under Sections 10-04-07, 10-04-07.1, or 10-04-08, N.D.C.C., and, further, that the sale or offer for sale by it of such unregistered securities is not in violation of section 10-04-04, N.D.C.C.
The State also contends that if it is determined that the securities need not be registered under the Securities Act and it is not unlawful to sell such unregistered securities, nevertheless the defendant trust company must be registered as a dealer in order to sell or offer the exempt securities for sale. It argues that Section 10-04-05, N.D.C.C., exempts from the registration requirements only the securities and not the persons who sell them or offer them for sale and, therefore, such persons are not exempt from the dealer registration requirements of Section 10-04-10, N.D.C.C. That section, in part, provides:
"No dealer or salesman shall offer for sale or sell any securities within or from this state, except in transactions exempt under section 10-04-06, unless he is registered as a dealer or salesman pursuant to the provisions of this section."
Section 10-04-06, N.D.C.C., exempts from the Securities Act a number of described transactions. The transactions of the defendant trust company, with which we are here concerned, do not come within the definition of any of these exemptions.
The Act defines a dealer as follows:
"`Dealer' shall mean every person, other than a salesman, who engages in this state, either for all or part of his time,
"a. * * *
"b. Directly or through an officer, director, employee, or agent, which officer, director, employee, or agent is not registered as a dealer under this chapter, in selling securities issued by such person."
Section 10-04-02(2), N.D.C.C.
The defendant trust company argues that the statutes do not require a dealer registration prior to the issuance or sale of securities which are exempt from registration where the persons and the instruments are subject to regulation and review by the state examiner. It argues that the intent of the Legislature in the adoption of the *580 Securities Act is obviously one of supervision in order that the public may be protected and that there is no need for double supervision. It cites the maxim:
"The law neither does nor requires idle acts;" Section 31-11-05(23), N.D.C.C.
Finally, it points out that the securities commissioner has singled out this lone corporation to supervise but does not supervise other financial institutions, such as, banking associations, savings and loan associations, and credit unions that daily send into the market place all manner of securities. The record does not disclose this to be a fact and it is not material here. We do not pass on the question in this case as the financial institutions described are not parties to this proceeding.
The present Securities Act was originally enacted in 1951. It is known as the "Securities Act of 1951." Section 10-04-01, N.D.C.C. (Chapter 106, S.L.1951). It repealed all of Chapter 10-04 of the North Dakota Revised Code of 1943, commonly referred to as the "Blue Sky Law." The repeal, however, was made subject to certain limitations whereby the repealed Act would remain in force for the purpose of enforcing violations and validating sales, contracts or agreements which came into existence prior to the effective date of the new Act. A dealer was defined under the old Act in inclusive terms, but excepted from the definition the entities described, including trust companies which sell or offer for sale securities specifically exempted. Section 10-0419, N.D.R.C., 1943. The securities of any state or national bank, or trust company, or of any building and loan association, authorized to do business in this state, were exempted from the provisions of the Act. Section 10-0403, N.D.R.C., 1943. Thus it was clear under the repealed Act that a trust company and its securities were exempted from the provisions of the former Act. Under the present Act, known as the Securities Act of 1951, the securities of a trust company, we have found, are exempted from registration under Section 10-04-05(2), N.D.C.C., but we find no provision which exempts the trust company from registration as a dealer in such securities. In this case it is agreed, for the purpose of determining whether or not a temporary injunction should issue, that the guaranteed certificates of investment and the capital notes are securities. Section 10-04-02(2), N.D.C.C., quoted at length above, insofar as applicable here, defines a dealer as "every person * * * who engages * * * directly * * * in selling securities issued by such person." There is no statutory provision which removes exempt securities from the definition of the term "securities" as defined by the Act. Section 10-04-05, N.D.C.C., merely exempts the securities described therein from registration. It appears to be the clear intent of the Legislature, and we therefore so hold, that the exemption of the guaranteed certificates of investment and the capital notes of the defendant trust company from the requirement that they be registered, does not exempt the trust company, as a dealer in them, from the requirement that it be registered as a dealer under the Securities Act of 1951. A similar result was obtained in First National Savings Foundation v. Samp, 274 Wis. 118, 80 N.W.2d 249, under similar statutory provisions.
We will now consider whether the trial court abused its discretion in denying the temporary injunction and dissolving the ex parte restraining order.
It appears from the record that the defendant trust company discontinued selling its capital notes in compliance with an order of the state examiner issued May 20, 1970, and has at all times complied therewith. It also appears that although the guaranteed certificates of investment are not registered with the securities commissioner, it is not unlawful to sell or offer them for sale pursuant to Section 10-04-04, N.D.C.C. In other words, the Legislature has not seen fit to require that such securities be removed from the market because the seller is not registered as a dealer or salesman. However, the seller may, if *581 not registered, be subject to penalties provided by Section 10-04-18, N.D.C.C.
As to the remaining allegations that the defendant trust company has agreed to pay usurious interest rates, has sustained an operating deficit, has refused to publish a statement of condition, and has issued and sold securities without having submitted such investment program to the state examiner, these are denied or explained by the defendant trust company in its answer and the issues raised thereby have not been resolved by trial.
The trial court did not refuse to issue the temporary injunction pending trial in the exercise of its discretion but refused on the ground that the State was not entitled to it as a matter of law. In this regard the trial court erred when it concluded that the trust company was not required to be licensed as a dealer to sell its exempt securities, but was correct in holding that the securities were exempt from registration. Therefore, we must reverse the order and remand the case for further proceedings before the trial court to determine the question, in its discretion, of whether it ought to issue the temporary injunction pending trial.
The order which is reversed by this opinion dissolved the temporary restraining order and denied a temporary injunction pending trial. Thus the effect of the reversal reinstates the temporary restraining order. We point out, however, that the control of the continuance, modification or dissolution of the temporary restraining order remains with the trial court.
Order reversed and case remanded.
ERICKSTAD, Acting C. J., KNUDSON, J., and EMIL A. GIESE, District Judge, concur.
ALVIN C. STRUTZ and WM. L. PAULSON, JJ., deeming themselves disqualified did not participate; EUGENE E. COYNE, Judge of the Fifth Judicial District and EMIL A. GIESE, Judge of the Sixth Judicial District sitting in their stead; however, EUGENE E. COYNE did not participate in this decision because of his untimely death.