EDGELEY EDUCATION ASSOCIATION,
Plaintiff-Appellant,

v.

EDGELEY PUBLIC SCHOOL DISTRICT
# 3, a public corporation,
Defendant-Appellee.

Civ. No. 9124.

Supreme Court of North Dakota.

July 11, 1975.

Rehearing Denied July 24, 1975.

Daniel J. Chapman, Bismarck, for plaintiff-appellant.

Kessel, Splitt & Kessel, LaMoure, for defendant-appellee; argued by Mr. Theodore F. Kessel, Sr.

Gerald W. VandeWalle, First Asst. Atty. Gen., Bismarck, amicus curiae.

SAND, Judge.

The plaintiff, Edgeley Education Association, appealed from the trial court's order dated June 3, 1975, dissolving a restraining order and refusing to grant a temporary injunction. Subsequently, a temporary restraining order and injunction was issued by this court pending the outcome of this appeal on June 17, 1975.

Plaintiff's complaint, dated May 29, 1975, alleged that Edgeley Public School District # 3, defendant and appellee herein, while negotiations were in process with plaintiff under Chapter 15–38.1, North Dakota Century Code, tendered contracts to the teachers which had a chilling effect on the negotiations and constituted bad faith in its negotiations. The complaint concluded by asking for an injunction prohibiting the defendant from accepting or putting into effect any contracts tendered, and requested that defendant be enjoined from hiring any person to replace any teacher represented by the negotiating unit.

The plaintiff made application to the district court for a restraining order and temporary injunction, whereupon the court issued its order to show cause. The affidavit in support of the application is as follows:

"MEREDITH THURLOW, being first duly sworn, deposes and says that he is the President of the Edgeley Education Association; that the Edgeley Education Association is the representative organization for the classroom teachers of the Edgeley Public School District No. 3, which has been designated as an appropriate negotiating unit; that the Edgeley Education Association and the Edgeley school district are presently engaged in negotiations pursuant to Chapter 15–38.1 of the North Dakota Century Code; that on or about the _____ day of May, 1975, the school board made demand upon the teachers represented by the Plaintiff association that they must return binding letters of intent by May 31, 1975; that such a requirement would have a chilling effect upon negotiations in that the school district would be under no compulsion to reach a settlement; that unless a temporary injunction is issued the binding letters of intent will have to be returned by the 31st day of May, 1975, and this Plaintiff will no longer be able to play an effective role in negotiations."

A similar affidavit by Glen Engle was also filed stating substantially the same information.

The trial court, on the basis of the application and supporting affidavits, issued an order directing the defendant school board to show cause on the 3rd day of June, 1975, why a temporary injunction should not be granted. The court also temporarily restrained the defendant school board from performing any acts stated in the order to show cause until the date of hearing.

Defendant, by affidavit, made a return to the order to show cause resisting the application for an injunction, as follows:

"Comes now Sam Hird, President of the Edgeley Public School District No. 3, a public corporation, and makes this Affidavit and Return to Order to Show Cause on its' behalf.

"Your affiant specifically resists paragraph # 1 of Plaintiff's Order * relating to the acceptance by it of contracts of-

---

* This apparently refers to the trial court's order to show cause.

fered to members and persons represented by the Edgeley Education Association and in support thereof alleges as follows: That heretofore in March of 1975 negotiations for salary and other benefits commenced between the Edgeley School District and the Plaintiff. That it became apparent from the initial conference that the demands of the Plaintiff were far in excess of what the said Defendant could offer. That thereafter on March 26, 1975 a letter was delivered to each teacher in the Edgeley Public School system to the effect that the said Defendant was contemplating nonrenewal of the teacher's contract for the coming school year. Said notice was made in accordance with provisions of Section 15–47–27 NDCC, a copy of which notice is attached hereto and marked as Defendant's Exhibit # 1.[1] That thereafter on the 3rd day of April, 1975 at the hour of 7:00 o'clock P.M. a meeting was held between the Defendant and the teachers in the Edgeley Public School System. That at said meeting the said teachers requested a continuance of said meeting and the board adjourned said meeting until April 9, 1975. That the said Defendant by and through it's

school board convened on said date for a continuance of the prior meeting but were informed by a member of the Plaintiff Association that none of its members would be present. That thereafter on the 15th day of April, 1975, the Defendant caused to be served upon all of the teachers in said school district a notice informing said teachers that they had a right to a continuing contract with the Defendant for the 1975–1976 school year and informing said teachers that they had until May 15, 1975 to accept said contract which notice was again given in conformance with Section 15–47–27 NDCC, a copy of which notice is attached hereto and marked as Defendant's Exhibit # 2.[2] That subsequently your Defendant did receive from the teachers in said school system an instrument entitled "Letter of Intent" a copy of which is attached hereto and marked as Defendant's Exhibit # 3.[3] That said "Letter of Intent" was a qualified notice dependant upon a contingency not then existing and did not constitute a binding contract between the teachers and the Defendant. That after the May 15, 1975 deadline had passed the Defendant issued a further notice on May 24,

---

1. "You are hereby advised that the school board of Edgeley Public School District # 3 is contemplating not renewing your teaching contract for the coming school year. A special meeting for the purpose of considering and acting upon this contemplated action will be held on April 3, 1975, at 7:00 o'clock p. m. at the Staff Room of the Edgeley High School at which time the board will discuss and give an explanation of the reasons for such contemplated action.

"You are also advised that the meeting will be closed to the public unless you request it be open and the board agrees to accede to your request. You are further advised that you have the right to have no more than two persons present at the meeting to represent and assist you and that if you so request, a continuance of the meeting will be granted for a period of time, not to exceed seven days.

"If as a result of the meeting the board determines that your contract for the coming year will not be renewed, you will be so advised in writing of that fact by April 15, 1975."

2. "By the non-action of the Board of Education to offer specific contracts by the legal date of April 15, you have the privilege of a continuing contract for the 1975–76 school year, at the same terms and conditions as your 1974–75 contract. Please be informed that to take advantage of this offer by non-action, your reply in writing to the Board is necessary by May 15.

"It was the position of the Board that it would be reasonable to expect progress toward negotiation settlement by April 15, and that it was facetious to even mention any contract at previous salary. However, it becomes evident that at least some wish to begin at this level and not be too considerate about the time loss and inconvenience it will cause certain people of both staff and Board."

3. "I hereby declare that it is my intention to teach in the Edgeley School District for the 1975–1976 school year, contingent upon the negotiated agreement between the Board of Education and the Edgeley Education Association."

1975 to all teachers of the Edgeley Public School system that said Defendant would refrain from issuing contracts for teachers in the school system until May 31, 1975 at 5:00 o'clock P.M., a copy of which notice is attached hereto and marked as Defendant's Exhibit # 4.[4] That your affiant has complied with all laws and statutes of the State of North Dakota relating to offer and renewal of teachers contracts.

"Your affiant resists paragraph # 2 of Plaintiff's Order * wherein it is asked that the Defendant be enjoined from hiring teachers to fill the positions presently vacant in the Edgeley Public School District. That the Defendant having complied with all laws and statutes of the State of North Dakota relating to teacher contracts and the Plaintiff having failed to comply with the same, said Defendant has no alternative but to fill said vacant teacher's positions as soon as possible in order to be in a position to provide education and schooling to it's patrons when school commences again in the month of August, 1975. That your Defendant by and through the school board members is pursuant to Section 15–29–08 NDCC charged with the responsibility of providing an education system for the children of the Edgeley Public School District within the means and resources available to them. That in this regard your school board members have exercised their administrative powers within the confines of the laws of the State of North Dakota to the best of their ability.

"Your affiant in response to paragraph # 3 of Plaintiff's Order * states that it has in the past negotiated with the Plain-tiff in good faith towards the settlement of teaching contracts for the forthcoming year. That meetings with the Plaintiff occurred on March 17, 1975, April 7, 1975, April 14, 1975, April 21, 1975, April 28, 1975, May 13, 1975, May 20, 1975 and May 27, 1975 all for the express purpose of resolving the matter of teachers contracts . but that said meetings failed to resolve the salary differences between the parties hereto."

On June 3, 1975, the district court, after the hearing, ordered the temporary restraining order dissolved, and extended for two days the time within which the board must accept the teacher's formal acceptance of the contract. Plaintiff appealed to this court and applied for a temporary injunction.

This court issued an order to defendant to show cause on June 9, 1975, why the application for temporary injunction pending appeal should not be granted, and on the same day, after a hearing, denied the application for a temporary injunction.

Thereafter, the defendant school board, on the 14th day of June, 1975, issued contracts to the teachers to be returnable on the 17th day of June, 1975. Plaintiff again contacted the district court for a temporary restraining order and was orally informed that the court would not issue a temporary restraining order or an injunction. The plaintiff thereafter made written application ex parte to this court for a temporary restraining order and injunction, which was granted to prevent the issues from becoming moot.

The primary issue before this court is whether or not the trial court

---

**4.** "The response you have given to the Board relative to their contract offer to you by non-action is not acceptable. The response constitutes a counter-offer rather than an acceptance of an offer of re-employment.

"It has therefore been the right of the Board since May 15 to declare all unaccepted positions open.

"To resolve this situation the Board now requires that you submit a proper accept-ance of proffered re-employment to the Clerk of the Edgeley Public School District by 5:00 P.M., Saturday, May 31, 1975. If such is not forthcoming, the Board may then decide to declare all proffered positions, not properly accepted, open for application."

* This apparently refers to the trial court's order to show cause.

abused its discretion in denying the temporary restraining order and temporary injunction. *Sand v. Peterson*, 30 N.D. 171, 152 N.W. 271 (1915). The burden rests upon the plaintiff to establish affirmatively that the trial court abused its discretion. *State ex rel. Holloway v. First American Bank & Trust Co.*, 186 N.W.2d 573 (N.D. 1971); *Lindsay v. Teamsters Union, Local No. 74*, 97 N.W.2d 686 (N.D.1959). In resolving this issue we are bound by the facts as presented to the district court for its consideration. The action of the school board on June 14, 1975, was presented to the district court and to this court, but only for purposes of supporting the application for a temporary restraining order. Such action is not part of the appeal and will, therefore, not be considered.

Unfortunately, we have before us only a mere skeleton of the facts establishing chronological events, without any significant evidence as to what happened at the "negotiation table" or why certain proposed meetings were extremely brief or were not held at all. Facts relating thereto could be important in view of the basic allegation of charging the school board with failure to negotiate in good faith. Even though the facts are scanty, to determine if the trial court abused its discretion, we need to examine the provisions of Chapter 15–38.1 with Sections 15–47–27 and 15–29–08(10), N.D.C.C., to determine if any legal obligations, rights, or privileges were created, and, if so, did defendant fail to comply with or perform such obligation, and was plaintiff denied any such legal right or privilege by action of defendant.

We believe, in construing statutes which are *pari materia*, every effort should be made to give meaningful effect to each without rendering one or the other useless. Reconciliation is the goal if it is possible. The legislative intent is important and is most frequently determined from the language employed.

The purpose of the Teachers' Representation and Negotiation Act is set forth in Section 15–38.1–01, N.D.C.C., as follows:

"In order to promote the growth and development of education in North Dakota which is essential to the welfare of its people, it is hereby declared to be the policy of this state to promote the improvement of personnel management and relations between school boards of public school districts and their certificated employees by providing a uniform basis for recognizing the right of public school certificated employees to join organizations of their own choice and be represented by such organization in their professional and employment relationships with the public school districts."

The good faith requirements are set out in Section 15–38.1–12, N.D.C.C., as follows:

"1. The school board, or its representatives, and the representative organization, selected by the appropriate negotiating unit, or its representatives, shall have the duty to meet at reasonable times at the request of either party and to negotiate in good faith with respect to:

"a. Terms and conditions of employment and employer-employee relations.

"b. The formulation of an agreement, which may contain provision for binding arbitration.

"c. Any question arising out of interpretation of an existent agreement.

"2. The parties must execute a written contract incorporating any agreement reached if requested by either party.

"3. Either party to a contract negotiated under this section may modify or terminate the contract on its annual anniversary date by giving notice of its desire to modify or terminate to the other party not less than sixty days prior to the annual anniversary date.

"4. The obligations imposed in this section shall not compel either party to

agree to a proposal or to make a concession."

The contract mentioned in subsection 3 refers to an agreement reached between the parties as stated in subsection 2. The term "contract" does not refer to the individual contract between the board and the teacher. This becomes clear upon examining the provisions of subsection 2 of Section 15–38.1–14, which provides as follows:

"Nothing contained herein is intended to or shall conflict with, contravene, abrogate, or diminish the powers, authority, duties, and responsibilities vested in boards of education by the statutes and laws of the state of North Dakota."

Keeping in mind the provisions of subsection 2 of Section 15–38.1–14, N.D.C.C., we now examine the provisions of Section 15–47–27, N.D.C.C., which are as follows:

"Any teacher who has been employed by any school district or the director of institutions in this state during any school year, shall be notified in writing by the school board or the director of institutions, as the case may be, not earlier than the fifteenth day of February and not later than the fifteenth day of April in the school year in which he or she has been employed to teach, of the determination not to renew the teacher's contract for the ensuing school year, if such determination has been made; and failure to give such written notice on or before said date shall constitute an offer to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year. On or before April fifteenth in any year and not earlier than February fifteenth, all teachers shall be notified of a date, which shall not be less than thirty days after the date of such notice, upon which they will be required to accept or reject proffered re-employment, and failure on the part of the the teacher to accept said offer within such time shall be deemed to be a rejection of the offer. Any teacher who shall have accepted the offer of re-employment, ei-

ther by the action or nonaction of the school board or the director of institutions, on or before April fifteenth, as herein provided, shall be entitled to the usual written contract for the ensuing school year, as provided by law and shall notify the school board or the director of institutions in writing of his or her acceptance or rejection on or before the date specified or before May fifteenth, whichever is earlier. Failure on the part of the teacher to provide such notification shall relieve the school board or the director of institutions of the continuing contract provision of sections 15–47–26 through 15–47–28. Nothing in this section shall be construed as in any manner repealing or limiting the operation of any existing law with reference to the dismissal of teachers for cause."

and the provisions of Section 15–29–08 (10), N.D.C.C., which are as follows:

"To contract with, employ, and pay all teachers in the schools and, for cause, to dismiss or suspend any teacher when the interests of the school may require it. Every teacher shall be required to hold a valid North Dakota teaching certificate issued by the superintendent of public instruction. No person who is related to any member of the board by blood or marriage shall be employed as a teacher without the concurrence of two-thirds of the board."

It becomes quite clear that the Legislature did not intend to either repeal or to amend by implication, or otherwise, any of the provisions of Section 15–47–27 and Section 15–29–08 (10). The Legislature, in Section 15–38.1–14 (2), N.D.C.C., employed language to insure that no such intent would be read into the provisions of Chapter 15–38.1, N.D.C.C. Whether this is wise or not is not for us to say. This court, in *Huso v. Bismarck Public School Board,* 219 N.W.2d 100 (N.D.1974), and in *Pollock v. McKenzie Public School District,* 221 N.W.2d 521 (N.D.1974), had under consider-

ation the provisions of Section 15–47–27, N.D.C.C. The court gave no indication that the provisions of Section 15–47–27 were other than mandatory.

It appears that the Legislature, in enacting Chapter 15–38.1, was aware that teachers negotiating on their own, either as individuals or self-styled groups, probably were not as effective or persuasive as a representative more learned in the process of negotiation would be and, therefore, provided for an organization which could undertake the causes of the teachers relating to their employment and profession. See Section 15–38.1–09, N.D.C.C.

The Act also provides for impasse procedures under Section 15–38.1–13, N.D.C.C., which were not resorted to by either party. We are aware that the commission under the impasse procedure does not have any binding authority but merely has the authority to make public its findings after a certain period of time.

This provision, and other provisions in the Act, lead us to believe that the Legislature intended that the representative for a negotiating unit or the fact-finding commission, as the case may be, resort to persuasion rather than to compulsory or mandatory proceedings.

A question was raised why the negotiating proceedings did not begin sooner, and the response was that the school board and, for that matter, the teachers had to await first the adjournment of the Legislature so as to be able to take into account any laws enacted that may touch upon school district revenues and other related items.

We have been urged by plaintiff to construe Chapter 15–38.1 so as to provide that when negotiations are in progress the provisions of Section 15–47–27, N.D.C.C., are suspended with reference to the school board. We are unable to find any language which permits this court to reach this con-

clusion, nor has any language been pointed out under which this court could place such a construction. To do so would require this court to legislate, which is a power vested in the Legislature and the people, but not in the court.

As has been pointed out in the amicus brief, there is a dire need for legislation delineating and making appropriate adjustments between Chapter 15–38.1 and Section 15–47–27, N.D.C.C. Such adjustment would require legislation. It is also brought out that, depending upon the time element, the provisions of Section 15–47–27, N.D.C.C., in one instance may be an advantage to the school board, whereas in another instance the advantage could be in favor of the teacher. Likewise, a temporary restraining order and injunction can unduly tip the advantage to one or the other party.

The phrase "good faith" is difficult to define and is almost impossible to apply without an evidentiary hearing in which all of the pertinent facts are brought out.

The district court in its order dissolving the restraining order and denying the temporary injunction dated June 3, 1975, found that the defendant, Edgeley School District, complied with all of the laws and statutes of the State of North Dakota in regard to the hiring of teachers and that there was no basis for granting the injunctive relief.

We basically agree that the school board attempted to follow the appropriate statutes even though in one or two instances it did more than the statutes required. In making this observation we are also aware that the teachers, in response to the acts of the school board, also acted beyond what the statute contemplates. Such acts, however, we believe were on a good faith basis. They do not constitute a violation of law, and in this respect we agree with the district court because we do not find that the defendant has failed to comply with or to perform any duties or obligations im-

posed by law. Neither do we find that any legal rights or privileges granted to the plaintiff by law have been denied to plaintiff as a result of the actions by the defendant. The plaintiff has failed to meet the burden of proof. We therefore conclude that the trial court did not abuse its discretion in refusing to grant a temporary injunction and by dissolving the temporary restraining order.

Case law on collective bargaining and good faith negotiations arising out of federal or sister state Acts which have been called to our attention are not of much assistance in this instance because of dissimilarities between, or absence of, key provisions in the respective Acts. Neither is case law arising out of labor disputes in the private sector, as distinguished from the public sector, of any significant assistance.

We believe the school board and the negotiating unit can enter into contracts under the provisions of Section 15–38.1–12, N.D.C.C., whereby both parties would waive the rights and privileges set out in Section 15–47–27, N.D.C.C. This, however, was not done.

Finally, as to the allegation that the defendant failed to negotiate in good faith, we do not have sufficient facts before us to make this determination. This question can be resolved only upon evaluation of evidence produced at an evidentiary hearing. From the facts before us we cannot assume the existence of bad faith.

The temporary injunction issued by this court is dissolved and the order of the trial court dissolving its restraining order and refusing to grant a temporary injunction is affirmed. Motion for attorney's fees is denied.

This being a question of public interest and concern, no costs are assessed.

ERICKSTAD, C. J., and PAULSON and PEDERSON, JJ., concur.

VOGEL, Judge (dissenting).

I regretfully dissent.

This is the first opportunity we have had to construe a statute which gives teachers the right to bargain collectively. I fear that the construction placed upon it by the majority will make that important statute meaningless.

I agree that we should construe statutes which appear to be in conflict so as to make them meaningful and reconcile them, if possible.

I believe that Section 15–47–27 and Chapter 15–38.1, N.D.C.C., are readily reconciled without conflict. Section 15–47–27 provides, in essence, that a school board contemplating nonrenewal of a teacher's contract must so notify her or him by April 15. If such notice is not given, the school board has thereby made an implicit offer to continue the contract on the same terms for another year. An offer of a contract, whether explicit or implicit, must be accepted by the teacher by May 15. If a notice of nonrenewal is given and adhered to, no offer of employment is made. If it is given and the contract is later offered and accepted, or if it is not given and the implicit offer is accepted, a contract results. *Pollock v. McKenzie County School District,* 221 N.W.2d 521 (N.D.1974); *Huso v. Bismarck Public School Board,* 219 N.W.2d 100 (N.D.1974). Beyond this—and beyond May 15, unless that date is extended by the parties—Section 15–47–27 has no effect at all.

What has this to do with the collective-bargaining law, Chapter 15–38.1, N.D.C.C.? Very little or nothing, in my opinion.

The collective-bargaining law contains these principal requirements:

1. Teachers and administrators have the right to form organizations to represent them (Sec. 15–38.1–07, subsec. 1).

2. Such organizations have the right to represent the negotiating unit in negotia-

tions with the school board (Sec. 15–38.1–08).

3. The representation shall include terms and conditions of employment, including salary (Sec. 15–38.1–09).

4. The school board and the negotiating unit have a duty to negotiate in good faith with regard to terms and conditions of employment (Sec. 15–38.1–12, subsec. 1, par. a).

(I pass over the provisions as to selection of bargaining units, since both parties here agree that the plaintiff is the bargaining unit for Edgeley teachers, and the provisions as to impasse procedures, since they are not binding and have not been invoked by either side.)

So far as the provisions summarized above are concerned, it seems clear to me that there is a duty to negotiate in good faith, and that the duty is unrelated to the provisions of Section 15–47–27. Particularly is this true if the negotiations continue after May 15, as they did in Edgeley, since Section 15–47–27 becomes irrelevant after that date.

The collective-bargaining statute differs from some other similar statutes in some respects: (1) there is a no-strike provision (Sec. 15–38.1–14, subsec. 1); (2) teachers and administrators have the right to refuse to join or participate in the activities of the organization (Sec. 15–38.1–07, subsec. 2); (3) a teacher or administrator has the right to present his views directly to the school board;[1] (4) there is a general provision, quoted in the majority opinion, that "nothing contained herein is intended to or shall conflict with, contravene, abrogate, or diminish the powers, authority, duties, and responsibilities vested in boards of education by the statutes and laws of the state of North Dakota." Sec. 15–38.1–14, subsec. 2, N.D.C.C.

Without the provision last cited, the entirety of Chapter 15–38.1 is consistent, clear, and comprehensible. With the provision last cited, it is either a nullity or incomprehensible. It is impossible for a statute relating to collective bargaining to be effective if it cannot diminish or conflict with the prior powers or authority of one of the parties to the bargaining. The new law either is effective, in which case it must affect the prior rights and authority of the parties to the bargaining, or the new law is a nullity. The majority opinion chooses to give overriding effect to the provision which makes it a nullity. I would prefer to interpret the Act in such a way as to make the entire Act effective, rather than ineffective.

I would read the provision last quoted in the sense in which it must have been intended: so as to provide that nothing contained in the chapter "shall conflict with, contravene, abrogate, or diminish the powers, authority, duties, and responsibilities vested in boards of education by the statutes and laws of the state of North Dakota" *except to the extent specifically provided therein.*

Such a reading is required in order to make sense of the statute, and to give effect to every part of it.

When so read, we have a comprehensible statute providing a method of collective bargaining. Under general principles of collective bargaining, "good faith" bargaining has a specific meaning. One thing that cannot be done in good-faith bargaining is to deal individually with members of bargaining units. This is, under general case law, an unfair labor practice [*Medo Photo Supply Corp. v. NLRB,* 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007 (1944)], even in the absence of bad faith [*NLRB v. Pepsi Cola Bottling Co. of Miami,* 449 F.2d 824 (5th Cir. 1971), *cert. denied* 407 U.S. 910, 92 S.Ct. 2434, 32 L.Ed.2d 683].

---

1. Note that there is no reciprocal right of the school board to present its views to individual teachers. N.D.C.C. § 15–38.1–08.

In this case, not only did the employer deal individually with the employees represented by the bargaining unit, but the employer issued ultimatums to each of them. To make matters worse, the trial court, by ordering the employees to sign contracts by a certain date or lose their rights, put the weight of the courts on one side of the scale while bargaining was still proceeding.

I would redress the balance by reversing and remanding with instruction to grant the injunction prayed for by the plaintiff association.

vides an opportunity to screen out false and groundless accusations.  SDCL 23–27–16.