**BELFIELD EDUCATION ASSOCIA-
TION, Petitioner and Appellant,**

v.

**BELFIELD PUBLIC SCHOOL
DISTRICT NO. 13, Respondent
and Appellee.**

Civ. No. 920122.

Supreme Court of North Dakota.

Feb. 23, 1993.

Michael Geiermann (argued) of Chapman & Chapman, Bismarck, for petitioner and appellant.

Paul F. Ebeltoft, Jr. (argued) of Mackoff, Kellogg, Kirby & Kloster, PC, Dickinson, for respondent and appellee.

MESCHKE, Justice.

The Belfield Education Association [BEA] appeals from a judgment dismissing its petition for a writ of mandamus to compel further negotiations about a master contract. We affirm.

BEA is the authorized representative of teachers employed by the Belfield Public School District. In the spring of 1991, BEA and the District entered into negotiations for a new master contract for the 1991–1992 school year. On May 14, 1991, the two sides met to establish ground rules for the negotiations. Two two-hour negotiating sessions were scheduled for May 17, 1991.

The first two-hour session on May 17 was consumed by disagreements about the ground rules. BEA objected to a proposal that negotiations be limited to the two two-hour sessions scheduled that day. Although apparently believing that additional negotiating sessions might be necessary, BEA eventually agreed to this proposal. BEA also objected to a proposed rule limiting the subjects to be negotiated to base salary and medical insurance. BEA wanted to negotiate numerous additional items, including sick leave, personal leave, and professional leave. The District originally took the position that these items were covered in school board policy and would not be negotiated. BEA asserted that they were salary items that, under North Dakota law, must be negotiated. The District finally agreed to negotiate about the leave items, too. The ground rules were then drafted and signed by the parties.

After a dinner break, negotiations reconvened. Each side submitted numerous proposals and counterproposals. BEA's submissions each included proposals on all of the leave items, as well as base salary and medical insurance. Each District submission covered base salary and medical insurance, with all other items to remain the same as the previous year's contract, that did not include any leave items. The District's negotiators characterized their last proposal as their "final offer." The meeting adjourned without an agreement.

Another negotiating session was held on August 17, 1991. At this session, the BEA negotiators restated their final proposal from the May 17 session, maintaining it was "the lowest that they could go." The District presented two new proposals, each offering increases in base salary from their previous "final offer" and keeping all leave items out of the master contract. The District's negotiators again characterized their last offer as a "final offer," and the meeting adjourned without an agreement.

The final negotiating session was held on September 28, 1991. The District restated its last offer from the August 17 meeting. BEA offered a counterproposal. The District's negotiators then announced that the school board had authorized the last proposal as its official "final offer." The meeting adjourned without an agreement.

 Alleging that the District had failed to negotiate in good faith, BEA petitioned the trial court for a writ of mandamus directing the District to resume negotiations and to negotiate in good faith. Trial was held on March 16, 1992. The trial court determined that the District had negotiated in good faith and entered judgment dismissing BEA's petition. BEA appealed.

NDCC 32–34–01 governs issuance of writs of mandamus:

The writ of mandamus may be issued by the supreme and district courts to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station....

The petitioner must show that he has no plain, speedy, and adequate remedy in the ordinary course of the law and that he has a clear legal right to the performance of the particular act sought to be compelled by the writ. *Wenman v. Center Board of the Valley City Multi–District Vocational Center*, 471 N.W.2d 461, 463 (N.D.1991). Issuance of the writ is left to the sound discretion of the trial court, and this court will not overturn a denial of the writ unless the trial court has abused its discretion. *North Dakota Council of School Admin-*

*istrators v. Sinner*, 458 N.W.2d 280, 284 (N.D.1990). We conclude that the trial court did not abuse its discretion in this case.

 The dispositive question on appeal is whether the District negotiated in good faith. The entire premise of BEA's petition is that the District negotiated in bad faith and should be ordered to return to the table for good faith negotiations. NDCC 15–38.1–12(1) creates a duty of good faith in teacher contract negotiations:

1. The school board, or its representatives, and the representative organization, selected by the appropriate negotiating unit, or its representatives, shall have the duty to meet at reasonable times at the request of either party and to negotiate in good faith with respect to:

 a. Terms and conditions of employment and employer-employee relations.

 b. The formulation of an agreement, which may contain provision for binding arbitration.

 c. Any question arising out of interpretation of an existent agreement.

Whether a party has negotiated in good faith under the statute is a question of fact. *Edgeley Education Association v. Edgeley Public School District # 3*, 256 N.W.2d 348, 352 (N.D.1977); *Dickinson Education Association v. Dickinson Public School District No. 1*, 252 N.W.2d 205, 210 (N.D.1977). Thus, our review is governed by the "clearly erroneous" standard of NDRCivP 52(a). *Dickinson Education Association*, 252 N.W.2d at 210. A trial court's findings of fact are presumed to be correct and will be deemed clearly erroneous only when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Dschaak v. Dschaak*, 479 N.W.2d 484, 486 (N.D.1992). We are not convinced that a mistake was made in this case.

 In challenging the trial court's finding that the District negotiated in good faith, BEA points to several acts by the District's negotiators that, according to BEA, demonstrate bad faith. BEA's primary argument is that the District refused

to negotiate the leave items that are part of the salary to be negotiated.

■ NDCC 15–38.1–12(1) requires negotiation of the "[t]erms and conditions of employment." We have construed that provision to mandate negotiation of salary and hours. *Fargo Education Association v. Fargo Public School District No. 1*, 291 N.W.2d 267, 271 (N.D.1980). Sick leave, personal leave, and professional leave are within the ambit of "salary" and "hours," and are mandatory negotiable items under NDCC 15–38.1–12(1). Furthermore, the District agreed in the ground rules to negotiate these items.

The question is whether the District "negotiated" these items.[1] For teacher negotiations, we defined "negotiate" in *Fargo Education Association v. Paulsen*, 239 N.W.2d 842, 847 (N.D.1976):

> As used in the statute, we believe to "negotiate" simply means to present proposals and offer counterproposals, to discuss proposals, to carry on a dialogue, to exchange ideas, all for the purpose of persuading or being persuaded by logic and reasoning. This means that the parties must also be willing to listen and not only talk. It is the art of friendly persuasion. The persuasion can result in an agreement and understanding or a settlement of issues. It does not mean that an agreement must be reached. Neither side is required by law to surrender or abrogate any of its duties and responsibilities. Neither does it mean formal or binding arbitration.
>
> From the foregoing definition and authorities, it becomes apparent that the term "negotiate in good faith" does not have any mysterious connotations or hidden meanings and as such it should not be too difficult to understand or to work within its framework.

NDCC 15–38.1–12(4) clarifies that good faith negotiation does not compel a party to agree to a proposal or to make a concession.

Although the District's negotiators initially indicated that they would not negotiate the leave items because those matters were covered in board policy, they eventually relented and agreed to negotiate on leave issues. BEA included various proposals about leave items in their offers and counteroffers, and there is no evidence that the District's negotiators refused to listen to those proposals. BEA was given the opportunity to persuade the District by the logic of its proposals. The District, however, took the position that it preferred that leave items be left out of the master contract. The District's negotiators testified that they were offering additional salary concessions to keep the leave items out of the master contract, and that they were willing to negotiate further about leave items if the parties came close to agreement on base salary and medical insurance.

BEA apparently seeks a ruling that the District was required to accept BEA's proposals on the leave items or to otherwise include those items in the master contract. The District, however, proposed that, as in prior years, the leave items be omitted from the master contract. Under Chapter 15–38.1, the District was not required to accept any specific proposal or to include the leave items. The leave items were negotiated.

■ BEA asserts that the District exhibited bad faith by attempting to limit the negotiations to two two-hour meetings. BEA argues that this demonstrates the District did not intend to negotiate in good faith with a view toward reaching an amicable agreement.

BEA's argument ignores the realities reflected in this record. One of the District's negotiators testified that, historically, the parties had reached agreements in contract negotiations within four or five hours. Furthermore, although the ground rules limited negotiations to the two two-hour sessions on May 17, two additional negotiating sessions were in fact held. Negotiations finally broke down when BEA's nego-

---

1. No transcript is made of teacher negotiation sessions, so we do not have a verbatim record of what was said at those sessions. Our record here consists of the testimony of various participants in those sessions and summary minutes taken by the District's secretary.

tiators walked out of the September 28 session, and BEA shortly thereafter brought this lawsuit. According to testimony of District representatives, the District at all times remained willing to attempt further negotiations.

Most importantly, however, BEA agreed in writing to the two two-hour meeting limitation. It is ironic that BEA asserts that a particular limitation is evidence of bad faith when BEA specifically agreed to it. Under the facts of this case, the District's attempt to limit the negotiations does not demonstrate a lack of good faith.

 BEA asserts that the District negotiated in bad faith by twice describing proposals as its "final offer," when in fact the school board had not authorized issuance of an official "final offer." Although not citing any supporting authority, and conceding in its brief that "case law does not reveal a definition of 'final offer,'" BEA asserts that "final offer" is a term of art that implies an official final proposal specifically adopted by the school board as its final offer before impasse.[2] BEA argues that use of this term was intended to mislead BEA's negotiators into believing that impasse was imminent.

The District's negotiators testified that they did not intend any special meaning when using the term, and only intended to get BEA to move off its position. Used in a generic sense, "final offer" is not significantly different from BEA's assertion that a proposal was "the lowest that they could go," when in fact they later did go lower. In both instances, the parties were merely using common negotiating techniques, and did not mislead the other party.[3]

 On appeal to this court, BEA bears the burden to affirmatively demonstrate that the District did not negotiate in good faith. *Edgeley Education Association,* 256 N.W.2d at 352. In *Fargo Edu-*

cation Association v. Paulsen, 239 N.W.2d at 847, we stated that the statutory definition of good faith in NDCC 1–01–21 applies in teacher-contract negotiations under Chapter 15–38.1:

> Good faith shall consist in an honest intention to abstain from taking any unconscientious advantage of another even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious.

In assessing good faith, courts do not focus upon isolated actions, but look to the overall conduct of a party to determine if it has actively engaged in the bargaining process with an open mind and sincere desire to reach an agreement. *Edgeley Education Association,* 256 N.W.2d at 352; *Fargo Education Association v. Paulsen,* 239 N.W.2d at 847. We are not persuaded that the District did not negotiate in good faith in this case.

Viewing the overall conduct of the District in these negotiations, we conclude that the trial court's finding that the District negotiated in good faith is not clearly erroneous. Accordingly, the court did not abuse its discretion in denying the petition. The judgment is affirmed.

VANDE WALLE, C.J., and LEVINE, J., and RALPH J. ERICKSTAD and VERNON R. PEDERSON, Surrogate Judges, concur.

Surrogate Judge RALPH J. ERICKSTAD was Chief Justice at the time this case was heard and served as surrogate judge for this case pursuant to NDCC 27–17–03.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of JOHNSON, J., disqualified, who was a member of the Court when this case was heard.

---

**2.** The teacher-contract-negotiation statutes, Chapter 15–38.1, use the term "final offer" only in provisions governing impasse. NDCC 15–38.1–13(2)(b) sets up a *"final offer resolution"* procedure if impasse has gone on for thirty days. We find no statutory recognition of the distinctive meaning of "final offer" urged by BEA.

**3.** Because parties to teacher-contract negotiations may attach special significance to the term "final offer," indiscriminate use of the term during negotiations may lead to confusion and ambiguity. That is a doubtful negotiating technique.

Justice NEUMANN and Justice SAND-STROM, not being members of the Court when this case was heard, did not participate in this decision.