2006 ND 42

**WARD COUNTY FARM BUREAU, a North Dakota Non–Profit Corporation, and Jim Lee, Plaintiffs and Appellants**

v.

**Jim POOLMAN, Insurance Commissioner for the State of North Dakota, in his official capacity and personally, and State of North Dakota, by and through its Insurance Commissioner, Defendant and Appellee.**

No. 20050170.

Supreme Court of North Dakota.

Feb. 23, 2006.

Lynn M. Boughey, Boughey Law Firm, Minot, ND, for plaintiffs and appellants.

Douglas A. Bahr, Solicitor General, Office of Attorney General, Bismarck, ND, for defendant and appellee.

MARING, Justice.

[¶ 1] The Ward County Farm Bureau and Jim Lee ("Bureau") appealed from a district court judgment denying their request for a writ of mandamus ordering the Insurance Commissioner to direct the

board of directors of Nodak Mutual Insurance Company ("Nodak") to implement recommendations contained in a prior order issued by the Commissioner lifting administrative supervision over Nodak. We conclude the trial court properly denied the writ because the Bureau has no clear legal right to the relief it seeks, and we affirm.

I

[¶ 2] Nodak is an insurance company serving more than 26,000 policyholders. The Bureau is a non-profit corporation consisting of about 1,200 members and most of the members carry insurance policies with Nodak. On September 23, 2002, the Commissioner placed Nodak under administrative supervision after receiving a letter from corporate officers who expressed management concerns. *See Nodak Mut. Ins. Co. v. Ward County Farm Bureau*, 2004 ND 60, ¶ 3, 676 N.W.2d 752. The Bureau objected to a change in Nodak's bylaws concerning nominations for the board of directors. Nodak proposed forming a nominating committee to screen nominations for directors rather than allowing policyholders to nominate candidates for the board of directors.

[¶ 3] On May 15, 2003, a market conduct examiner appointed by the Commissioner under N.D.C.C. § 26.1–03–19.2 reported that the proposed changes to Nodak's bylaws did not allow "for multiple candidates for the same Board seat," and a "more reasonable approach would be for a person who wanted to run for a Board of Directors opening to become eligible by presenting a petition signed by a specified number of policyholders" because "[t]his would provide for multiple candidates for the open Board seat to be voted on at the next annual meeting." The market conduct examiner recommended that Nodak's "Board should review the Bylaw provisions relating to nominations for candidates for the Board of Directors to allow policyholders to vote for multiple candidates for an open Board seat."

[¶ 4] On June 2, 2003, the Commissioner adopted the market conduct examination report and ordered that Nodak "comply with all of the examiner's recommendations listed in the examination report insofar as they relate to a specific statutory requirement." On July 29, 2003, the Commissioner lifted the order placing Nodak under administrative supervision and ordered that "[t]he new Board will review its Bylaw relating to the nominations for candidates for the Board of Directors to allow policyholders to vote for multiple candidates for an open Board seat." Nodak subsequently reported to the Commissioner that it had accomplished a "full review" of its bylaws and articles, but Nodak did not change its bylaws to allow direct nomination of directors by shareholders and to allow multiple candidates for open board positions. Nodak reported:

A full review of all Bylaws and Articles has now been accomplished. Recommended changes will be the subject of a new proxy in 2004. This Board of Directors will have its first experience with the nominating procedure set forth in the Nodak Mutual Insurance Company Bylaws in the annual meeting to be held in 2004. This will also give the Board insight and opportunity to appropriately assess whether or not any amendment is necessary or appropriate to the bylaw provision relating to nominations for candidates to the Board of Directors.

[¶ 5] In October 2004, the Bureau and Lee, a policyholder nominated for a board seat by the president of the Bureau, sought a writ of mandamus requesting the

district court to order the Commissioner to:

> require the enforcement of his [July 29, 2003] order and direct the Nodak board of directors to immediately implement the recommendations accepted by the company and ordered by the commissioner by changing its bylaws to lessen the time frame for the submission of nominations to the nominating committee, to require multiple candidates for the same board seat, and to allow a person to become eligible to run for a board of director position by presenting a petition signed by a specified number of policyholders (for example: 100).

The district court granted the Commissioner's motion to dismiss the request for a writ of mandamus because the Commissioner's order instructed Nodak only to "review" its bylaws on nominations for candidates for the board of directors and because a writ was not the only plain, speedy, or adequate remedy in the law.

## II

[¶ 6] The Bureau argues that the district court erred in refusing to issue a writ of mandamus.

[¶ 7] Section 32–34–01, N.D.C.C., governs issuance of writs of mandamus and provides:

> The writ of mandamus may be issued by the supreme and district courts to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled and from which the party is precluded unlawfully by such inferior tribunal, corporation, board, or person.

[¶ 8] It is well established that a petitioner for a writ of mandamus must first demonstrate a clear legal right to performance of the particular act sought to be compelled by the writ. *See, e.g., Edinger v. Governing Authority of Stutsman County Corr. Ctr. and Law Enforcement Ctr.*, 2005 ND 79, ¶ 8, 695 N.W.2d 447; *Kouba v. Hoeven*, 2004 ND 185, ¶ 5, 687 N.W.2d 491. Issuance of a writ of mandamus is left to the sound discretion of the district court. *Edinger*, at ¶ 8; *Kouba*, at ¶ 5. A district court abuses its discretion if it acts in an arbitrary, unreasonable, or capricious manner, or if it misapplies or misinterprets the law. *Edinger*, at ¶ 8; *Kouba*, at ¶ 5.

[¶ 9] The act the Bureau seeks to be compelled by the writ is implementation of the recommendations of the market conduct examiner relating to nominations for candidates for the board of directors. However, as the district court ruled, the Commissioner's order did not mandate that Nodak adopt those recommendations, but only required that the recommendation be "review[ed]" by the board. "Review" means "to examine or study again … to go over or examine critically or deliberately." *Merriam–Webster's Collegiate Dictionary* 1067 (11th ed. 2003). The record shows that Nodak reviewed the recommendation. The Bureau does not cite, nor have we found, any authority requiring nomination of directors by shareholders or multiple candidates for open board positions. Contrary to the Bureau's argument, the Commissioner's order cannot be fairly characterized as requiring that Nodak adopt the market conduct examiner's recommendations, even if we assume that the Commissioner has the authority to so order.

[¶ 10] We conclude the Bureau has not shown a clear legal right to performance of

the act sought to be compelled by the writ, and therefore, the district court did not abuse its discretion in dismissing the mandamus action.

### III

[¶ 11] It is unnecessary to address the other issues raised by the parties. The judgment is affirmed.

[¶ 12] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.