2006 ND 136

**KENMARE EDUCATION ASSOCIA-TION, Petitioner and Appellant**

v.

**KENMARE PUBLIC SCHOOL DISTRICT NO. 28, Respondent and Appellee.**

**No. 20050422.**

Supreme Court of North Dakota.

June 29, 2006.

Michael Geiermann (argued), Schulz Geiermann & Bergeson Law Offices, P.C., Bismarck, ND, for petitioner and appellant.

Gary R. Thune (argued), Pearce & Durick, Bismarck, ND, for respondent and appellee.

KAPSNER, Justice.

[¶ 1] Kenmare Education Association ("KEA") appeals from a judgment denying a petition for a writ of mandamus. The petition sought the removal of contract language in the negotiated agreement inserted by the Kenmare Public School District No. 28 ("School District") after negotiations failed to resolve a conflict. We hold the district court did not abuse its discretion in denying the writ of mandamus, was not clearly erroneous in its finding of good faith negotiations, and did not err in concluding the School District had the authority to issue a last-offer contract. We affirm.

I

[¶ 2] When a speech language pathologist left Kenmare in June 2004, the School District attempted to hire a replacement.

The School District was unable to hire a new speech language pathologist before the start of the next school year due in part to a salary limitation of $30,000 a year. The School District was limited from offering a higher salary because a contract negotiated by the School District and KEA fixed the amount of pay a teacher could make. Because the School District was unable to hire a replacement at a salary of $30,000 a year, the School District contracted with the Souris Valley Special Education Unit for the services of a speech language pathologist and teacher's aide for a cost of approximately $60,000. As a cost saving measure for future years, the School District wanted the authority to provide incentive payments to teachers in hard-to-fill positions.

[¶ 3] On April 13, 2005, the School District and KEA began contract negotiations for the following school term. KEA represents the certified teaching personnel within the Kenmare school system as the representative organization. The parties reached agreement on most negotiable issues, but could not resolve one issue proposed by the School District. The School District requested additional contract language that would allow the School District the discretion to pay more than the minimum hiring salary. KEA objected to the proposed language. KEA claimed giving the School District the discretion to increase an individual's salary would usurp the organization's power and allow for individual contract negotiations. Following additional negotiations, the School District countered with proposed language that would allow an individual in a difficult-to-hire position—as defined by the Educational Standard and Practices Board—to be paid a salary not to exceed $15,000 more than the minimum hiring salary. KEA again objected. The parties agreed

they had reached an impasse in negotiations. They requested the North Dakota Education Fact Finding Commission ("Commission") review the dispute.

[¶ 4] The Commission recommended the School District be allowed to provide for special accommodations of higher pay only for a speech language pathologist, but not provide additional compensation for any other difficult-to-hire position. Following the Commission's recommendation, the parties again attempted to negotiate an agreement. When no agreement could be reached, the Commission's findings were published in the local newspaper.

[¶ 5] Following the publication, the parties engaged in a final round of negotiations, this time including the School District's final offer. The School District's final offer—based on what the Commission had recommended—allowed the School District to pay a speech language pathologist an amount up to $15,000 more than the base pay for teachers. The additional pay was limited to this single teaching area and was limited to years in which a speech language pathologist was considered a hard-to-fill-position as defined by the Educational Standard and Practices Board. KEA again objected to this additional language arguing the proposed language would allow the School District to engage in separate contract negotiations, rather than allowing KEA the exclusive right to negotiate for teachers employed by the School District. The School District then unilaterally included this proposed language in the agreement.

[¶ 6] KEA filed a petition for a writ of mandamus in district court requesting the School District be forced to remove the additional contractual language in the negotiated agreement.[1] An "Alternative

1. Although the parties failed to resolve this area of dispute we will, as the parties did,

Writ of Mandamus" was issued the same day the petition was filed requiring the removal of the disputed language or, in the alternative, an appearance before the district court. After a hearing and full briefing by the parties, the district court vacated the Alternative Writ of Mandamus and denied KEA's request for a writ of mandamus. The court found the parties acted in good faith, and the additional contractual language did not give the School District the authority to go beyond the negotiated agreement for recruiting qualified instructors in any other subject area.

[¶ 7] KEA appeals claiming the School District did not negotiate in good faith, and the court erred in denying the writ of mandamus because the current arrangement allows the School District to unilaterally issue contracts and negotiate with individual teachers. The School District argues the court did not abuse its discretion in denying the writ of mandamus, was not clearly erroneous in its finding of good faith negotiations, and properly concluded the School District had authority to include language providing a higher salary for a speech language pathologist.

## II

[¶ 8] KEA argues the School District did not negotiate in good faith because it issued contracts based upon a final offer of the School District. KEA petitioned for a writ of mandamus requiring the School District to remove the additional contract language regarding the speech language pathologist.

[¶ 9] Issuance of a writ of mandamus is left to the sound discretion of the district court. *Wutzke v. Hoberg*, 2004 ND 42, ¶ 3, 675 N.W.2d 179. A district court abuses its discretion if it acts in an arbitrary, unreasonable, or capricious manner,

refer to the final resolution as the "negotiated

or if it misapplies or misinterprets the law. *Id.*

[¶ 10] Section 32–34–01, N.D.C.C., governs the issuance of writs of mandamus:

> The writ of mandamus may be issued by the supreme and district courts to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. . . .

[¶ 11] A petitioner for a writ of mandamus must first demonstrate a clear legal right to performance of the particular act sought to be compelled by the writ. *Ward County Farm Bureau v. Poolman*, 2006 ND 42, ¶ 8, 710 N.W.2d 423. The petitioner must also demonstrate there is no other plain, speedy, and adequate remedy in the ordinary course of law. *Wutzke v. Hoberg*, 2004 ND 42, ¶ 3, 675 N.W.2d 179. To determine whether KEA was entitled to the writ, we must examine whether the School District had the authority to issue its last-offer negotiated agreement.

[¶ 12] KEA argues *Hilton v. N.D. Educ. Ass'n*, 2002 ND 209, 655 N.W.2d 60, requires all teachers to be bound by the negotiated agreement and holds teachers cannot be treated discriminately as the School District proposes to treat the speech language pathologist. In *Hilton* we stated:

> Hilton therefore was a teacher for purposes of the teachers' representation and negotiation law, and we conclude the trial court correctly decided Hilton was a member of the C.E.A. appropriate negotiating unit. Because Hilton was a member of the C.E.A. appropriate negotiating unit, he was bound under N.D.C.C. ch. 15–38.1 by the negotiated agreement between the C.E.A. appropriate

agreement."

ate negotiating unit and the School District.

*Id.* at ¶ 19. *Hilton* is distinguishable from this case. In *Hilton*, the core issue this Court was deciding was whether a counselor, who was certificated under N.D.C.C. ch. 15–36 and who did not devote more than half time to administrative duties, was a teacher as defined by statute. This Court determined the counselor was a teacher and therefore Hilton was "bound under N.D.C.C. ch. 15–38.1 by the negotiated agreement" between the "negotiating unit and the School District." *Id.*

[¶ 13] The process of getting to the negotiated agreement was not at issue in *Hilton*, as it is here. Although the resolution of the negotiations in this case included the imposition of a provision that will allow a single position to be treated differently from other teachers, that resolution does not conflict with *Hilton* because it is part of the negotiated agreement resulting from the negotiations between the parties. Further, that provision is subject to the limitations discussed below.

### III

[¶ 14] If a statutory representative organization is formed, a school district must negotiate with the representative organization under N.D.C.C. § 15.1–16–08, and must negotiate in good faith. N.D.C.C. § 15.1–16–13.

■ [¶ 15] Unlike a private sector employee, a teacher does not have the option of engaging in a strike. *See* N.D.C.C. § 15.1–16–16. As such, teachers are often without the ultimate bargaining weapon that could pressure their employers into agreement. In order to compensate for the lack of a right to strike, the legislature has enacted an impasse provision that allows for mediation and a fact-finding process through the Commission. *See* N.D.C.C. §§ 15.1–16–02, 15.1–16–15. The Commission does not have binding authority on the parties, but does have the authority to make its findings public. *Dickinson Educ. Ass'n v. Dickinson Pub. Sch. Dist.*, 499 N.W.2d 120, 122 n. 3 (N.D.1993) (*Dickinson II* ). Our statute does not provide for additional procedures after a Commission has made its findings public and negotiations are still at an impasse.

[¶ 16] In *Dickinson Educ. Ass'n v. Dickinson Pub. Sch. Dist. No. 1*, 252 N.W.2d 205, 209 (N.D.1977) (*Dickinson I* ), this Court addressed whether a school board is required to continue with negotiations after it has received the report of the Commission, has held a subsequent meeting with the teachers' negotiating unit, and has found an impasse still existed. This Court found "no provision in Chapter 15–38.1, N.D.C.C., which would require such continued negotiations at such a point." [2] *Id.* This Court went on to hold:

> We find that the statutory scheme set forth in Chapter 15–38.1, N.D.C.C., recognizes that there comes a point—after the conclusion of a good faith negotiation process—when a school board must be allowed to make contractual offers to the teachers of a school system, which contracts the teachers must choose either to accept or to reject. It should be noted that the provisions of such contracts so offered, relative to the status of negotiations, would be important factors in the determination of a school board's motive.

*Id.* at 209–10 (emphasis removed); *see also Edgeley Educ. Ass'n v. Edgeley Pub. Sch. Dist. No. 3*, 256 N.W.2d 348, 354 (N.D. 1977) (*Edgeley II* ) (following *Dickinson I*

---

**2.** While both *Dickinson I* and *Dickinson II* addressed the statutory scheme found under N.D.C.C. ch. 15–38.1, the same statutory scheme is in place at N.D.C.C. ch. 15.1–16. Thus, the same analysis is applicable.

and agreeing that a school district is allowed to give last-offer contracts to teachers following impasse and good faith negotiations).

[¶ 17] The power of school districts to issue last-offer contracts was limited by *Dickinson II*. In *Dickinson II*, we stated:

> We recognize that NDCC Ch. 15–38.1 does not place school boards and public school teachers on equal footing in contract negotiations. In all contract negotiations conducted under NDCC Ch. 15–38.1, a school board always holds a trump card—the power to unilaterally issue last-offer contracts, which teachers must either accept or reject—ranking higher than any held by the teachers. Because of that tremendous disparity in bargaining power, we decline to extend *Edgeley II* to allow a school board to unilaterally issue last-offer contracts containing provisions that, while not applicable to the school year that is the subject of negotiation, are applicable to a future year not yet under negotiation.

*Dickinson II*, 499 N.W.2d 120, 126 (N.D. 1993). Thus, the scope of a school district's authority is limited when an impasse exists. A school district is precluded from issuing contracts on negotiable issues for future years. A school district is limited to issuing last-offer contracts for the current period of negotiations.

[¶ 18] This case falls under the *Dickinson I* analysis because the School District did not attempt to impose its last offer on future negotiation periods, as was attempted under *Dickinson II*. The School District's last offer was limited to the contractual provisions for the current period of negotiations. KEA argues the School District does not have the power to issue this last-offer contract. This argument would essentially require us to overrule our previous decisions in *Dickinson I* and *Edgeley II*.

[¶ 19] In previous decisions, we requested a legislative solution that would correct our interpretation had we wrongly interpreted the statute. *See, e.g., Dickinson I*, 252 N.W.2d at 213; *Edgeley II*, 256 N.W.2d at 354. Notably, the Legislative Assembly in 2001 revised N.D.C.C. ch. 15–38.1 and replaced it with N.D.C.C. ch. 15.1–16. *See* 2001 N.D. Sess. Laws ch. 181, §§ 4, 21. The revised statute did not alter our previous construction of the statute, and did not address the difficult situation of what procedures to follow after an impasse has been reached, the Commission has issued its recommendation, and the parties still disagree as to how to resolve the dispute. The legislative silence in the 2001 revision of this statute suggests this Court's decisions in *Dickinson I, Edgeley II*, and *Dickinson II* were correct. *Rodenburg v. Fargo–Moorhead YMCA*, 2001 ND 139, ¶ 26, 632 N.W.2d 407 (legislature's failure to amend language interpreted by the courts is evidence the court's interpretation is in accordance with the legislative intent). If there is an impasse and an end in the negotiation process, a school district has the authority to issue last-offer contracts. *Dickinson I*, 252 N.W.2d at 209–10; *Edgeley II*, 256 N.W.2d at 354. A school district's authority to issue last-offer contracts is limited to the current period of contract negotiations because of the unequal bargaining power. *Dickinson II*, 499 N.W.2d at 126. A school district is limited to issuing last-offer contracts that effect current periods of negotiation. *Id.*

[¶ 20] We are mindful that a school district's authority to end contract negotiations creates unequal bargaining power. But pragmatically speaking, were negotiations to proceed unrestricted for an unlimited amount of bargaining, the School District and KEA might never form a

contract. This Sisyphean act could not be what the legislature had in mind when it enacted the impasse provisions. The judicial remedy for this unequal bargaining power continues to be a probing review of the negotiation process for bad faith practices.

[¶ 21] KEA has not demonstrated a clear legal right to the removal of the additional contract language regarding a speech language pathologist, nor has it demonstrated the denial of the writ was an abuse of discretion. The district court correctly determined KEA was not entitled to the writ.

## IV

[¶ 22] KEA argues the School District did not negotiate in good faith because it issued a contract in violation of KEA's right to negotiate on behalf of the teachers. KEA bears the burden to affirmatively demonstrate the School District did not negotiate in good faith. *Edgeley II*, 256 N.W.2d 348, 352 (N.D.1977). Whether a party has negotiated in good faith is a question of fact reviewed under a clearly erroneous standard of review. *Belfield Educ. Ass'n v. Belfield Pub. Sch. Dist. No. 13*, 496 N.W.2d 12, 14 (N.D. 1993).

[¶ 23] Under N.D.C.C. § 15.1–16–13, a duty of good faith negotiations is required of a school district and the representative organization. The overall conduct of the parties is evaluated to determine whether good faith negotiations have occurred. The statutory definition of good faith found in N.D.C.C. § 1–01–21 applies in teacher-contract negotiations:

> Good faith shall consist in an honest intention to abstain from taking any unconscientious advantage of another even through the forms or technicalities of law, together with an absence of all in-

formation or belief of facts which would render the transaction unconscientious.

*Belfield Educ. Ass'n*, 496 N.W.2d at 16. In assessing good faith, courts are to review whether parties have actively engaged in the bargaining process with an open mind and sincere desire to reach an agreement. *Id.*

[¶ 24] KEA has not demonstrated the court's finding that the School District acted in good faith was clearly erroneous. Initially, the School District requested the following additional language: "At the discretion of the board, in hard to fill positions, the individual being hired may be paid over the minimum hiring salary." There were several more negotiating sessions between the parties. During those meetings, all outstanding issues were settled between parties except for the additional language to increase wages above the salary schedule. The School District modified its proposal to be: "At the discretion of the board in hard to fill positions (defined by Educational Standard and Practices Board), the individual hired may be paid over the minimum hiring salary not to exceed $15,000." The dispute was then brought before the Commission. After the Commission released its report, the parties again tried to negotiate an agreement, but were unsuccessful. Finally, the School District issued its final proposal that was included in the contract. The final language stated: "In years when speech language path[ologist] (SLP) has been classified by the ESPB as a hard to fill position, the board in [its] full discretion may offer an SLP candidate an annual salary which may exceed, by $15000 or less, that salary which is otherwise authorized by this negotiated agreement."

[¶ 25] KEA has not pointed to any specific instances of conduct that would demonstrate bad faith by the School District.

Furthermore, there has been no showing that the School District negotiated this contract with any group or individual other than KEA. KEA's argument is premised on the erroneous assumption that contracts formed without KEA's consent are bad faith per se. KEA has not demonstrated that the district court's determination of good faith was clearly erroneous.

## V

[¶ 26] KEA argues that as a matter of law it has the exclusive right to negotiate on behalf of the teachers in the district and the School District does not have the right to impose a contract provision which permits negotiations with individual teachers.

[¶ 27] By statute, teachers are not required to join a representative organization such as KEA. Section 15.1–16–07(1), N.D.C.C., states: "An individual employed as a teacher *may* form, join, and participate in the activities of a representative organization of the individual's choosing *for the purpose of representation on matters of employer-employee relations.*" N.D.C.C. § 15.1–16–07(1) (emphasis added). Teachers may also "refuse to join or participate in the activities of a representative organization." N.D.C.C. § 15.1–16–07(3). Nowhere in N.D.C.C. ch. 15.1–16 is the word "exclusive" used. KEA attempts to read an exclusivity requirement from N.D.C.C. § 15.1–16–08: "A representative organization has the right to represent a negotiating unit in matters of employee relations with the board of a school district. Any teacher or administrator has the right to present the individual's views directly to the board."

[¶ 28] Statutory interpretation is a question of law subject to full review upon appeal. *Hilton v. N.D. Educ. Ass'n,* 2002 ND 209, ¶ 10, 655 N.W.2d 60.

Our primary objective in the interpretation of a statute is to ascertain the intent of the legislature. We look first to the language of the statute. If the language of a statute is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit. If a statute's language is ambiguous or of doubtful meaning, we may consider extrinsic aids, including legislative history, along with the language of the statute, to ascertain legislative intent.

*Harter v. N.D. Dep't of Transp.,* 2005 ND 70, ¶ 7, 694 N.W.2d 677. A statute is ambiguous if it is susceptible to meanings that are different, but rational. *Hilton,* at ¶ 10.

[¶ 29] We have previously determined portions of the former version of the code ambiguous and have resorted to extrinsic aids, including legislative history, to interpret the statute. *See, e.g., Hilton,* 2002 ND 209, ¶ 16, 655 N.W.2d 60 (using legislative history to interpret whether counselor was a teacher for purposes of N.D.C.C. ch. 15–38.1); *Loney v. Grass Lake Pub. Sch. Dist.,* 322 N.W.2d 470, 472–73 (N.D.1982) (stating N.D.C.C. ch. 15–38.1 ambiguous regarding whether school district's only certified teacher-employee was appropriate negotiating unit entitled to negotiate with school district); *Fargo Educ. Ass'n v. Fargo Pub. Sch. Dist.,* 291 N.W.2d 267, 271–72 (N.D.1980) (recognizing ambiguity in N.D.C.C. ch. 15–38.1 regarding subjects of negotiation). We conclude whether the representative organization has the "exclusive" right is ambiguous from the statute. We therefore look to the legislative history for guidance.

[¶ 30] The 2001 Legislative Assembly created an omnibus bill that revised several provisions of the education code previously found in Title 15. *See* 2001 N.D. Sess. Laws ch. 181. The bill was designed

to reword certain provisions of the code dealing with teacher representation and negotiation, but not to make substantive changes. *Hearing on H.B. 1045 Before the House Standing Comm.*, 57th N.D. Legis. Sess. (Apr. 16, 2001) (testimony of Senator Wanzek). However, a draft version of N.D.C.C. § 15.1–16–08 "received some embellishment." *Id.* (written testimony from the Legislative Council). "At the request of the NDEA [North Dakota Education Association], the committee added that an individual presenting his views directly to the school board may not enter into independent negotiations with the board." *Id.* (written testimony from the Legislative Council). The proposed version of N.D.C.C. § 15.1–16–08 included the phrase "exclusive right to represent" and "may not enter into independent negotiations with the board." *Comparisons of Language Regarding the Right to Negotiate in Current Law, House Bill No. 1045, and a Proposed Amendment,* prepared by the North Dakota Legislative Council staff for Representative Hawken (April 23, 2001). The final version of the bill deleted the words "exclusive" and the language stating "may not enter into independent negotiations with the board." N.D.C.C. § 15.1–16–08. The final version was not substantively changed from the previous version of the code. Compare the former version of N.D.C.C. § 15–38.1–08 repealed by 2001 N.D. Sess. Laws ch. 181, § 21:

> 15–38.1–08. Right to negotiate. Representative organizations have the right to represent the appropriate negotiating unit in matters of employee relations with the school board. Any teacher, or administrator, has the right to present his views directly to the school board.

with the final version of N.D.C.C. § 15.1–16–08:

> 15–38.1–08. *15.1–16–08. Representative organization—Negotiating unit—*

Right to negotiate. ~~Representative organizations have~~ *A representative organization has* the right to represent ~~the appropriate~~ *a* negotiating unit in matters of employee relations with the ~~school~~ board *of a school district.* Any teacher, or administrator, has the right to present ~~his~~ *the individual's* views directly to the ~~school~~ board.

[¶ 31] The "embellished" version of N.D.C.C. § 15.1–16–08 (created in House Bill No. 1045) proposed by NDEA and rejected by the Legislative Assembly provided:

> A representative organization has the *exclusive* right to represent a negotiating unit in matters of employee relations with a school board. An individual employed as a teacher or as an administrator may independently present the individual's views to a school board, *but may not enter into independent negotiations with the board.*

(Emphasis added).

[¶ 32] KEA is asserting a position that was rejected by the Legislative Assembly. It is not the province of this Court to enact judicially what the legislature rejected. Rather, we look to the statute to determine whether the negotiated agreement can provide for discriminate treatment of a single teacher. Section 15.1–16–13(1), N.D.C.C., provides:

> The board of a school district or its representatives and the representative organization or its representatives shall, if requested by either entity, meet at reasonable times and negotiate in good faith regarding:
>
> a. The terms and conditions of employment.
>
> b. Employer-employee relations.
>
> c. Formation of a contract, which may contain a provision for binding arbitration.

d. The interpretation of an existing contract.

We determine a and b of this subsection are broad enough to encompass a provision in the negotiated agreement that permits the School District to contract with an individual teacher on a distinct basis subject to the limitations outlined above. There is no suggestion in this record that the School District intended to or did negotiate separately with any teacher except for the speech language pathologist which negotiations would be constrained by the limits of the negotiated agreement. Under these facts, we conclude the limited ability to contract separately for an identified teacher need is not contrary to N.D.C.C. ch. 15.1–16.

VI

[¶ 33] We affirm the judgment of the district court.

[¶ 34] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.