2014 ND 157

**DICKINSON EDUCATION ASSOCIATION, Petitioner and Appellee**

v.

**DICKINSON PUBLIC SCHOOL DISTRICT, Respondent and Appellant.**

**No. 20130350.**

Supreme Court of North Dakota.

July 17, 2014.

Michael J. Geiermann, Bismarck, N.D., for petitioner and appellee.

Rachel A. Bruner–Kaufman (argued) and Gary R. Thune (on brief), Bismarck, N.D., for respondent and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] The Dickinson Public School District ("District") appealed from a district court judgment granting the Dickinson Education Association's ("Association") petition for a writ of mandamus and ordering the District to offer the Association a one-year negotiated agreement for the 2013–2014 school year. We conclude the district court did not err in limiting the District's authority to unilaterally issue last-offer contracts to a one-year period and did not abuse its discretion in issuing the writ of mandamus. We affirm.

I

[¶ 2] For several years before the 2013–2014 school year, the Association and the District had conducted negotiations under N.D.C.C. ch. 15.1–16 and developed and agreed upon a series of negotiated master agreements. The prior negotiated agreements between the Association and the District contained the terms and conditions of employment between the certified staff and the District. The prior negotiated agreement's terms and conditions carry over to the next year unless the conditions are modified, changed, or deleted. The Association and the District had negotiated and agreed to two-year negotiated agreements for the last ten years.

[¶ 3] Between December 2012 and May 2013, the Association and the Dickinson Board of Education ("Board") held collaborative bargaining team meetings for purposes of formulating a negotiated agreement. The Association and the District's negotiations covered various provisions for both the 2013–2014 and 2014–2015 school years, but the parties were ultimately unable to come to a resolution on all issues. In May 2013, after declaring an impasse, the parties sought the involvement of an education fact-finding commission ("Commission").

[¶ 4] In June 2013, the Commission held a hearing to assist the parties in resolving the impasse and subsequently issued its report and recommendations. The Commission's report recommended: (1) a two-year contract; (2) that all items previously agreed to remain in the agreement; (3) the Board's final offer on salary in year one and year two of the two-year contract; and (4) the addition of one professional development day in year two of the contract. On July 11, 2013, the Commission published its findings and recommendations in the Dickinson Press. In late-July 2013, with the parties still unable

to reach an agreement, the District unilaterally issued contracts based on the Commission's recommendations, containing provisions for the 2013–2014 and 2014–2015 school years.

[¶ 5] In August 2013, the Association petitioned the district court for a writ of mandamus and also filed an application for temporary restraining order and other supporting documents. On August 8, 2013, the district court granted an alternate writ of mandamus, suspending the continuing contract offers made by the Board for the 2013–2014 school year, prohibiting the District from requiring the contract offers be returned until further court order, and ordering the District to execute a negotiated agreement for only the 2013–2014 school year. After a September 2013 telephonic hearing, the district court issued an order quashing the alternate writ of mandamus and ordering that individual teaching contracts for the 2013–2014 school year based on the Board's final offer were due September 13, 2013. The Association's petition for writ of mandamus remained pending, and the parties agreed the issue before the court was whether the District could unilaterally issue contracts for the 2014–2015 school year based on the negotiation process.

[¶ 6] In October 2013, the district court held a hearing on the Association's petition, after which the court granted the petition, concluding the unilateral offer of a two-year negotiated agreement is not lawful in North Dakota and the Association was entitled to an order of mandamus requiring the District to offer the Association a one-year negotiated agreement for the 2013–2014 school year. The court subsequently issued findings of fact, conclusions of law, and an order of mandamus. A judgment of mandamus was entered on October 30, 2013.

II

[¶ 7] The District argues the Association did not meet its burden of proof to show it had a clear legal right to the granting of the petition for writ of mandamus and the district court erred in limiting the school district's authority to unilaterally issue last-offer contracts to only a one-year period.

[¶ 8] Section 32–34–01, N.D.C.C., addresses when a district court may issue a writ of mandamus:

> The writ of mandamus may be issued by the supreme and district courts to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled and from which the party is precluded unlawfully by such inferior tribunal, corporation, board, or person.

See also N.D. Const. art. VI, § 8 ("The district court shall have authority to issue such writs as are necessary to the proper exercise of its jurisdiction.").

[¶ 9] Whether to issue a writ of mandamus is left to the district court's sound discretion. See Kenmare Educ. Ass'n v. Kenmare Pub. Sch. Dist. No. 28, 2006 ND 136, ¶ 9, 717 N.W.2d 603 ("Kenmare"); Wutzke v. Hoberg, 2004 ND 42, ¶ 3, 675 N.W.2d 179. A district court abuses its discretion if it acts in an arbitrary, unreasonable, or capricious manner, or if it misapplies or misinterprets the law. Kenmare, at ¶ 9; Wutzke, at ¶ 3.

[¶ 10] The petitioner seeking a writ of mandamus must show a "clear legal right to performance of the particular act sought to be compelled by the writ." Kenmare, 2006 ND 136, ¶ 11, 717 N.W.2d 603; Ward County Farm Bur. v. Poolman,

2006 ND 42, ¶ 8, 710 N.W.2d 423. The petitioner must also show that there is no other "plain, speedy, and adequate remedy in the ordinary course of law." *Kenmare*, at ¶ 11 (citing *Wutzke*, 2004 ND 42, ¶ 3, 675 N.W.2d 179). In this case, to decide whether the Association was entitled to the writ, this Court must examine whether the District had the authority to issue its last-offer negotiated agreement. *See, e.g., Kenmare*, at ¶ 11. A district court's issuance of a writ of mandamus will not be reversed unless "it should not have been issued as a matter of law, or the trial court abused its discretion." *Burley v. North Dakota Dep't of Transp.*, 1999 ND 232, ¶ 6, 603 N.W.2d 490.

[¶ 11] In granting the Association's petition for a writ of mandamus, the district court found both parties had negotiated in good faith. The court also found, however, that the Association and the District had not agreed on the establishment of a two-year negotiated agreement and that the District's offer to the Association contained terms and conditions that could not be performed during the 2013–2014 school year, including a salary schedule for the 2014–2015 school year. The court concluded the attempt to negotiate a two-year agreement during the negotiation process and throughout the education fact-finding commission process did not permit the District to unilaterally issue contract offers for two school years. The court held the District's unilateral offer of a two-year negotiated agreement, containing provisions for both the 2013–2014 and 2014–2015 school years, violated limits on school districts in making unilateral offers established in *Dickinson Educ. Ass'n v. Dickinson Pub. Sch. Dist.*, 499 N.W.2d 120 (N.D. 1993) ("*Dickinson II* "), and was thus unlawful.

A

[¶ 12] The District argues it had authority to unilaterally issue contracts based on the Commission's recommendations, which contained provisions for both the 2013–2014 and 2014–2015 school years, because the parties were clearly negotiating a two-year contract. The District asserts the period of negotiations included both school years and the parties had discussed a two-year agreement throughout the negotiation process. The District contends the Association did not raise the duration of the contract as an "impasse issue" before the Commission, but rather the Association had argued for a two-year contract with a higher salary than offered by the Board. The District asserts the Board reasonably believed the Association had agreed to the two-year length of the contract.

[¶ 13] The District contends that if the Board was limited to unilaterally issuing contracts for only a one-year period, the parties would not have needed the assistance of the Commission and the Board would not have offered as high of a base salary increase for the 2013–2014 school year. The District also contends nothing prevents the parties from negotiating a two-year master contract and North Dakota law specifically allows for it. *Cf.* N.D.C.C. § 15.1–16–18 (providing a contract between a district and representative organization prevents another group from petitioning for recognition "for the duration of the contract or three years, whichever is less"). The Association responds, however, that the legal issue before this Court is whether the Association's actions allowed the District to unilaterally issue contracts and a negotiated agreement for a two-year period.

[¶ 14] We believe our decision in *Dickinson II*, 499 N.W.2d 120, is dispositive of this appeal.

B

[¶ 15] Generally, N.D.C.C. ch. 15.1–16 governs the process of contract negotia-

tions between public school districts and teachers. We have explained the statutory scheme found at N.D.C.C. ch. 15.1–16 is the same as the scheme previously found at N.D.C.C. ch. 15–38.1, and our case law addressing N.D.C.C. ch. 15–38.1 remains applicable in analyzing N.D.C.C. ch. 15.1–16. *See Kenmare,* 2006 ND 136, ¶ 16 n. 2, 717 N.W.2d 603; *see also* 2001 N.D. Sess. Laws ch. 181, §§ 4, 21.

[¶ 16] A teacher "may form, join, and participate in the activities of a representative organization of the individual's choosing for the purpose of representation on matters of employer-employee relations," but may also "refuse to join or participate in the activities of a representative organization." N.D.C.C. § 15.1–16–07(1), (3). Under N.D.C.C. § 15.1–16–08, if a statutory representative organization is formed, a school district must negotiate with the organization. Both the school district and the representative organization must negotiate in good faith. N.D.C.C. § 15.1–16–13. Under N.D.C.C. § 15.1–16–13(4), however, "[n]othing in this section compels either the board of a school district or a representative organization to agree to a proposal or to make a concession."

[¶ 17] Because teachers do not have the right to strike under North Dakota law, *see* N.D.C.C. § 15.1–16–16, this Court has recognized "teachers are often without the ultimate bargaining weapon that could pressure their employers into agreement," and "to compensate for the lack of a right to strike, the legislature has enacted an impasse provision that allows for mediation and a fact-finding process through the Commission." *Kenmare,* 2006 ND 136, ¶ 15, 717 N.W.2d 603 (citing N.D.C.C. §§ 15.1–16–02, 15.1–16–15). Although the Commission may not bind the parties, it has the authority to make its findings public. *Id.*

[¶ 18] Nonetheless, after the Commission has made public its findings, the stat-utory scheme does not provide further procedures when negotiations are still at an impasse. *Id.* Because no statutory procedure exists when negotiations remain at an impasse, in *Dickinson Educ. Ass'n v. Dickinson Pub. Sch. Dist. No. 1,* 252 N.W.2d 205, 209–10 (N.D.1977) (*"Dickinson I"*), this Court established that a school district may give last-offer contracts to teachers following impasse and good faith negotiations:

> In [*Dickinson I*], this Court addressed whether a school board is required to continue with negotiations after it has received the report of the Commission, has held a subsequent meeting with the teachers' negotiating unit, and has found an impasse still existed. This Court found "no provision in Chapter 15–38.1, N.D.C.C., which would require such continued negotiations at such a point." *Id.* This Court went on to hold:
>
> > We find that the statutory scheme set forth in Chapter 15–38.1, N.D.C.C., recognizes that there comes a point— after the conclusion of a good faith negotiation process—when a school board must be allowed to make contractual offers to the teachers of a school system, which contracts the teachers must choose either to accept or to reject. It should be noted that the provisions of such contracts so offered, relative to the status of negotiations, would be important factors in the determination of a school board's motive.

*Id.* at 209–10 (emphasis removed); *see also Edgeley Educ. Ass'n v. Edgeley Pub. Sch. Dist. No. 3,* 256 N.W.2d 348, 354 (N.D.1977) (*Edgeley II*) (following *Dickinson I* and agreeing that a school district is allowed to give last-offer contracts to teachers following impasse and good faith negotiations).

*Kenmare,* 2006 ND 136, ¶ 16, 717 N.W.2d 603 (footnote omitted).

[¶ 19] Subsequently, however, in *Dickinson II,* 499 N.W.2d at 126, this Court provided some limits to the school district's power to issue a unilateral last-offer contract after the good-faith negotiations process had concluded and an impasse still existed:

> We recognize that NDCC Ch. 15–38.1 [presently found at N.D.C.C. ch. 15.1–16] does not place school boards and public school teachers on equal footing in contract negotiations. In all contract negotiations conducted under [N.D.C.C. ch. 15.1–16], a school board always holds a trump card—the power to unilaterally issue last-offer contracts, which teachers must either accept or reject—ranking higher than any held by the teachers. Because of that tremendous disparity in bargaining power, we decline to extend *Edgeley II* to allow a school board *to unilaterally issue last-offer contracts containing provisions that, while not applicable to the school year that is the subject of negotiation, are applicable to a future year not yet under negotiation.*

*Dickinson II,* at 126 (emphasis added). In *Kenmare,* 2006 ND 136, ¶ 17, 717 N.W.2d 603, we reiterated this holding in *Dickinson II* and further stated, "Thus, the scope of a school district's authority is limited when an impasse exists. A school district is precluded from issuing contracts *on negotiable issues for future years.* A school district is limited to issuing last-offer contracts for the current period of negotiations." (Emphasis added.)

[¶ 20] On appeal, the District argues our decision in *Kenmare* was clarifying this Court's holding in *Dickinson II* when we stated, "A school district is limited to issuing last-offer contracts *for the current period of negotiations." Kenmare,* 2006 ND 136, ¶ 17, 717 N.W.2d 603 (emphasis added). The District contends this Court has never limited a school district's authority to issue last-offer contracts to one year when the parties were negotiating a two-year contract throughout the negotiation process and this Court has consistently referred to the "period of negotiation." *See id.* at ¶ 19. The District's position here is essentially that by negotiating terms covering a potential two-year agreement, the District was thereafter allowed to unilaterally issue the contract covering those future years that were under negotiation. The District misreads our decision in *Kenmare.*

[¶ 21] Although the District asserts the "current period of negotiation" in *Kenmare* was for the 2005–2006 and 2006–2007 school years, the precise issue raised in *Kenmare* was not whether the school district had the authority to unilaterally issue last-offer contracts covering multiple school years. Instead, this Court addressed the issue of whether the district court erred in concluding the school district had authority to unilaterally issue last-offer contracts and negotiate with individual teachers. *See Kenmare,* 2006 ND 136, ¶ 7, 717 N.W.2d 603. Rather than clarifying *Dickinson II,* we specifically stated that the *Kenmare* case fell "under the *Dickinson I* analysis" because the school district had not attempted to impose its last offer "on future negotiation periods, as was attempted under *Dickinson II." Kenmare,* at ¶ 18.

◼ [¶ 22] To the extent *Kenmare* involved multiple school years, however, we clarify that the duration of the last-offer contract was not the issue this Court decided in that decision. Further, to clarify this Court's holding in *Dickinson II,* which involved only one school year, after the Commission makes public its findings and good-faith negotiations remain at an impasse, a school district may unilaterally issue a last-offer contract, but the last-

offer contract is limited to contractual provisions for only the one school year under negotiation and may not contain provisions applicable to a future school year, so as to preserve a representative organization's ability to negotiate in future years. *See Dickinson II*, 499 N.W.2d at 126.

[¶ 23] We are mindful of the unequal bargaining power created by a school district's authority to end contract negotiations. The apparent purpose of allowing a school district to bring good-faith negotiations for an ensuing school year to an end is to permit the schools to operate with a teaching staff for that school year. Limiting a school district's authority to issue unilateral last-offer contracts to a single school year then under negotiation is consistent with that purpose. The statutory scheme under N.D.C.C. ch. 15.1–16 contemplates such continuing negotiation between school districts and representative organizations, and N.D.C.C. § 15.1–16–13(4), regarding negotiating in good faith, states "[n]othing in this section compels either the board of a school district or a representative organization to agree to a proposal or to make a concession." We note N.D.C.C. § 15.1–16–13(3) states, "Either the board of a school district or the representative organization may modify or terminate the contract on its annual anniversary date by giving notice of its desire to modify or terminate the contract to the other party not less than sixty days before the annual anniversary date." We further note that a number of statutes, addressing the renewal or nonrenewal of teacher contracts in N.D.C.C. ch. 15.1–15, contemplate annual deadlines for such decisions. *See, e.g.*, N.D.C.C. §§ 15.1–15–04, 15.1–15–05. We have also previously encouraged a legislative solution:

> In previous decisions, we requested a legislative solution that would correct our interpretation had we wrongly interpreted the statute. *See, e.g., Dickinson I*, 252 N.W.2d at 213; *Edgeley II*, 256

N.W.2d at 354. Notably, the Legislative Assembly in 2001 revised N.D.C.C. ch. 15–38.1 and replaced it with N.D.C.C. ch. 15.1–16. *See* 2001 N.D. Sess. Laws ch. 181, §§ 4, 21. The revised statute did not alter our previous construction of the statute, and did not address the difficult situation of what procedures to follow after an impasse has been reached, the Commission has issued its recommendation, and the parties still disagree as to how to resolve the dispute. The legislative silence in the 2001 revision of this statute suggests this Court's decisions in *Dickinson I, Edgeley II*, and *Dickinson II* were correct. *Rodenburg v. Fargo–Moorhead YMCA*, 2001 ND 139, ¶ 26, 632 N.W.2d 407 (legislature's failure to amend language interpreted by the courts is evidence the court's interpretation is in accordance with the legislative intent).

*Kenmare*, 2006 ND 136, ¶ 19, 717 N.W.2d 603.

[¶ 24] We conclude the district court did not misinterpret the law in limiting the District to unilaterally offering a one-year contract for the 2013–2014 school year. We conclude the Association showed that it a had a clear legal right to relief and the district court did not abuse its discretion in granting the Association's petition for a writ of mandamus.

### III

[¶ 25] We have considered the remaining issues and arguments and find them to be either unnecessary to our decision or without merit. The judgment is affirmed.

[¶ 26] CAROL RONNING KAPSNER, LISA FAIR McEVERS and DALE V. SANDSTROM, JJ., concur.

CROTHERS, Justice, dissenting.

[¶ 27] I agree the holding in *Dickinson Educ. Ass'n v. Dickinson Pub. Sch. Dist.*, 499 N.W.2d 120 (N.D.1993) (*"Dickinson II "*) is dispositive of this appeal. Majority opinion at ¶ 14. I respectfully disagree that the facts as found by the district court, when applied to that law, establish the required "clear legal right to performance of the particular act sought to be compelled by the writ." *Id.* at ¶ 10 (citations omitted). I would hold that the district court abused its discretion by misapplying the law, and would reverse and vacate the writ.

[¶ 28] The record shows the District and the Association held ten collective bargaining meetings between December 11, 2012 and May 22, 2013. Starting at the February 13, 2013 meeting, the parties began negotiating a two-year contract, just as they had done successfully during every other year for the last ten years. In 2012 and 2013, only a two-year contract was negotiated at every meeting up to the final meeting on May 22. Then, on the brink of declaration of an impasse, the Association first introduced the notion of a one-year contract. Until that change in position, the sticking point was whether an additional professional development day would be required in year two of the contract. The two-year contract duration had never been a point of contention.

[¶ 29] The district court made findings about the history of these parties negotiating two-year contacts: "The terms and conditions of the prior negotiated agreement carry over to the next year unless the conditions are modified, changed or deleted. The [Association] and the District have negotiated and agreed to a two-year negotiated agreement for the last ten years." The district court also found "the parties entered into a negotiation process under N.D.C.C. Ch. 15.1–16 and had meetings between December 11, 2012 and May

22, 2013, with the declaration of impasse as the District determined that continued negotiations were nonproductive. Both the [Association] and the District agreed they were at impasse at the May 22, 2013 meeting."

[¶ 30] Regarding contract term negotiations, the district court found that "[d]uring the negotiation process, the parties discussed various issues. During the negotiation process, the [Association] and the District were attempting to negotiate a two-year agreement which would cover the 2013–14 and 2014–15 school years. There was no agreement between the [Association] and the District on the establishment of a two-year negotiated agreement."

[¶ 31] The holding in *Dickinson II* is that school boards cannot "unilaterally issue last-offer contracts containing provisions that, while not applicable to the school year that is the subject of negotiation, are applicable to a future year not yet under negotiation." 499 N.W.2d at 126. That holding does not prohibit an agreement for two years. Rather, the holding recognizes the disparate bargaining power between the parties and prohibits a school board from imposing contract terms that have not been the subject of negotiation. *See Id.* at 125–26 (holding the Association's assertion is correct that "if the District is going to . . . unilaterally issue contracts on its 'last offer' that last offer is limited to contractual provisions for the school year which is the subject of negotiations and no others").

[¶ 32] "[T]o 'negotiate' simply means to present proposals and offer counterproposals, to discuss proposals, to carry on a dialogue, to exchange ideas, all for the purpose of persuading or being persuaded by logic and reasoning." *Edgeley Educ. Ass'n v. Edgeley Pub. Sch. Dist. No. 3*, 256 N.W.2d 348, 352 (N.D.1977). Here, the parties had a ten-year history of negotiating two-year contracts. For this contract,

the parties negotiated a two-year contract up until the brink of declaring an impasse. Under the law and these facts, I believe the district court erred in reaching two of its conclusions of law:

"The attempt to negotiate a two-year negotiated agreement during the negotiation process and throughout the Education Fact Finding Commission process, does not, under the facts of this case, allow the District to unilaterally issue contract offers for two school years.

"The last offer of the District contained provisions for the 2013–14 school year and the 2014–15 school year. Based upon the limitations placed upon school districts in making unilateral offers as established by the North Dakota Supreme Court in [*Dickinson II*], the unilateral offer of a two-year negotiated agreement violates [*Dickinson II*] and is not lawful in North Dakota."

[¶ 33]   Instead, North Dakota law does authorize the District to unilaterally issue contracts for two school years when that was the contract duration negotiated by the parties from December 11, 2012 to near the end of the last negotiations meeting on May 22, 2013.   Holding otherwise dilutes protections afforded to both negotiating parties that last-offer contracts are limited to issues negotiated by the parties. *See Dickinson II,* 499 N.W.2d at 125–26.

[¶ 34]   DANIEL J. CROTHERS